JOST and others, Respondents, v. DAIRYLAND POWER COOPERATIVE, Appellant.*

*No. 135. Argued November 24, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 647.)

* Motion for rehearing denied, with costs, on March 3, 1970.

For the appellant there were briefs by *Hale, Skemp, Hanson, Schnurrer & Skemp* and *T. H. Skemp,* all of La Crosse, and oral argument by *Quincy H. Hale.*

For the respondents there was a brief by *Fugina, Kostner, Ward, Kostner & Galstad* and *La Vern G. Kostner* and *William N. Koslo,* all of Arcadia, and oral argument by *La Vern G. Kostner.*

HEFFERNAN, J. One of defendant's principal objections to the judgment is that plaintiffs' counsel was permitted to proceed until almost the close of his case before electing to rely on a theory of nuisance rather than negligence. Defendant before trial moved that the pleadings be made more definite and certain, apparently on the theory that the complaint purported to allege a cause

of action both in negligence and in nuisance, and that plaintiffs must elect to rely on one cause of action or the other. The trial judge declined to order such election. Defendant contends that thereafter plaintiffs offered "voluminous" testimony in an attempt to show the defendant's negligence in permitting the emission of sulphur fumes into the atmosphere. Our review of the 900 page record gives no support to the defendant's contention. In the entire transcript only a very few questions could be construed as bearing upon negligence. Contrary to defendant's claim, Attorney Kostner almost immediately dispelled any question in regard to the legal theory on which he was relying. After a defense objection to questions posed to the first witness, Attorney Kostner stated:

"If the court please, our purpose in asking the question is to show that at the present time there is no control of the diffusion of sulfur dioxide gases from the Alma plant into the atmosphere. Whether or not it's possible, or whether or not there is no method of doing it, is not material because if the sulfur dioxide gases are diffused in the atmosphere and that causes damage to the property, the question of whether or not it can, by proper scientific methods, be controlled is not material. The question is, did it."

It seems eminently clear that, from the very outset, the case was tried on the theory of nuisance and not on the ground that the defendant had failed to exercise due care.

Defendant apparently contends that the failure to denominate the cause of action as either nuisance or negligence or to plead allegations that could be construed as giving rise to both theories results in a fatal error. We do not agree—a cause of action is not constituted by labeling the operative facts with the name of a legal theory. The operative facts themselves, if they show the invasion of a protected right, constitute the cause of action. What they are called is immaterial. If the facts reveal an apparent right to recover under any legal

theory, they are sufficient as a cause of action—and there is no violation of the rules of pleading if the facts lead to the defendant's liability on more than one legal theory.

Negligence and nuisance, of course, are not always mutually exclusive legal concepts. Prosser points out:

"Another fertile source of confusion is the fact that nuisance is a field of tort liability, rather than a type of tortious conduct. It has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion. The attempt frequently made to distinguish between nuisance and negligence, for example, is based upon an entirely mistaken emphasis upon what the defendant has done rather than the result which has followed, and forgets completely the well established fact that negligence is merely one type of conduct which may give rise to a nuisance." Prosser, *Law of Torts* (hornbook series, 3d ed.), Nuisance, p. 594, sec. 88.

In the instant cause there was no reason for confusion. Plaintiffs' attorney from the outset made it clear that liability was predicated on the *fact* that sulphur-dioxide gases were emitted into the atmosphere, despite complaints over a period of several years. There was no attempt to hinge plaintiffs' case on the theory that the defendant was not exercising due care. Under the plaintiffs' theory, which we deem to be a correct one, it is irrelevant that defendant was conforming to industry standards of due care if its conduct created a nuisance. We see no error in plaintiffs' pleading of the case, nor can we conclude that the trial conduct of plaintiffs in any way misled defendant or prejudiced its defense by requiring it to prepare for trial on a theory subsequently abandoned.

The jury found that Dairyland Power Cooperative produced its power in such a manner as to constitute a continuing nuisance to the plaintiffs. The following question was, however, answered "no" by the jury, "Did such nuisance cause substantial damage to their alfalfa crops and lands?" Nevertheless, the jury found the damage to

the Jost alfalfa crops amounted to $250 for each of the two years, the Andrew Noll damage to $145 for each year, and the Norbert Noll damage to $145 for each year. In addition, Andrew Noll's farm was found to have sustained a $500 diminution in market value.

Appellant claims that the trial judge erred in changing the answer to the substantial damage question from "no" to "yes." It should be noted that this question posed more than one point for the jury's determination; one, did the nuisance cause the damage, and, two, was the damage substantial. The cause element of the question, however, is not argued; and all that defendant contends is that the damage, though caused by the nuisance, was not substantial and that, therefore, the court erred in changing the jury's answer. The rule is clear. A trial court may not change the jury's answer to a question unless it appears that the answer is not supported by any "credible evidence." *Leatherman v. Garza* (1968), 39 Wis. 2d 378, 386, 159 N. W. 2d 18; *Auster v. Zaspel* (1955), 270 Wis. 368, 71 N. W. 2d 417; *Paul v. Hodd* (1955), 271 Wis. 278, 73 N. W. 2d 412.

The damage to the alfalfa crop was undisputed. Even Danzinger, the neighboring farmer who testified, ostensibly for the defendant, estimated the crop damage at five percent. Moreover, the jury found the damage to the alfalfa crop alone to be not less than $290 for the least damaged of the plaintiffs. The court defined substantial damage as:

". . . a sum, assessed by way of damages, which is worth having; opposed to nominal damages, which are assessed to satisfy a bare legal right. Substantial damages are damages which are considerable in amount and intended as a real compensation for a real injury."

The jury was properly instructed. The sums found for crop damage, though meager, are supported by the evidence. Having found such sums to be justly owing, it appears that by no rationalization can it be concluded that the sums properly payable did not constitute "sub-

stantial damage." In the oft-quoted case, *Pennoyer v. Allen* (1883), 56 Wis. 502, 14 N. W. 609, the court points out that only a "substantial injury" is compensable or protected against by law. Substantial injury is defined as "tangible" injury, or as a "discomfort perceptible to the senses of ordinary people." The Restatement, 4 *Torts*, p. 246, sec. 827, follows the same rationale:

". . . where the invasion involves physical damage to tangible property, the gravity of the harm is ordinarily regarded as great even though the extent of the harm is relatively small. But where the invasion involves only personal discomfort and annoyance, the gravity of the harm is generally regarded as slight unless the invasion is substantial and continuing." *See also Prosser, supra,* page 599.

Here the damage was to tangible property. The damage was apparent and undisputed. The trial judge summarized the nature of the damage:

"Aside from this testimony [Danzinger, discussed *supra*], exhibits and testimony of the plaintiffs which showed that plants and vegetation were affected by the sulphur fumes; that flowers could not be raised; that screens became rusty within a short time and totally unusable within two years. To buy the defendant's theory that the plaintiffs were not ordinary sensitive people would mean that the ordinary common housewife likes rusty screens, enjoys barn insects in her home, does not like flowers, delights in buying all her garden vegetables in a store and that her farm husband says, 'so what' if alfalfa plants turn a little yellow and the leaves drop off."

We conclude that the injury was substantial as a matter of law, since under the reasoning of *Pennoyer, supra,* and the Restatement, the injury was obvious injury to tangible property. Moreover, it was, in fact, of such a nature that the jury placed more than a nominal value upon the injury done.

Defendant strenuously argues that it was prejudiced by the court's refusal to permit certain testimony, par-

ticularly testimony that tended to show that defendant had used due care in the construction and operation of its plant, and to show that the social and economic utility of the Alma plant outweighed the gravity of damage to the plaintiffs.

Defendant's contention that the evidence should have been admitted rests on two theories; one, that due care, if shown, defeats a claim for nuisance, and, two, that, if the social utility of the offending industry substantially outweighs the gravity of the harm, the plaintiffs cannot recover damages.

We can agree with neither proposition. As this court pointed out in *Bell v. Gray-Robinson Construction Co.* (1954), 265 Wis. 652, 657, 62 N. W. 2d 390:

> "A nuisance does not rest on the degree of care used . . . but on the degree of danger existing even with the best of care. [Citing authority] To constitute a nuisance, the wrongfulness must have been in the acts themselves [*i.e.*, the consequence of the acts] rather than in the failure to use the requisite degree of care in doing them . . . ."

*Pennoyer v. Allen, supra,* page 512, points out:

> ". . . it is no defense to show that such business was conducted in a reasonable and proper manner . . . . It is the interruption of such enjoyment and the destruction of such comfort that furnishes the ground of action, and it is no satisfaction to the injured party to be informed that it might have been done with more aggravation."

*Brown v. Milwaukee Terminal Railway Co.* (1929), 199 Wis. 575, 224 N. W. 748, 227 N. W. 385, sets forth the same rule of law, *i.e.*, that freedom from negligence is no defense if the consequences of the continued conduct nevertheless cause substantial injury to a claimant.

In any event it is apparent that a continued invasion of a plaintiff's interests by nonnegligent conduct, when the actor knows of the nature of the injury inflicted, is an intentional tort, and the fact the hurt is administered nonnegligently is not a defense to liability. *See* Prosser,

*supra,* pp. 594 ff., sec. 88; Restatement, *supra,* p. 226, sec. 822.

It is thus apparent that the facts tending to show freedom from negligence would not have constituted a defense to plaintiffs' nuisance action. It was therefore proper that such evidence was excluded (the nominal character of plaintiffs' proof as to negligence has been commented on above).

While there are some jurisdictions that permit the balancing of the utility of the offending conduct against the gravity of the injury inflicted, it is clear that the rule, permitting such balancing, is not approved in Wisconsin where the action is for damages. We said in *Pennoyer v. Allen, supra,* page 512:

"When such comfort and enjoyment are so impaired, and compensation is demanded, it is no defense to show that such business was conducted in a reasonable and proper manner, and with more than ordinary cleanliness, and that the odors so sent over and upon such adjacent premises were only such as were incident to the business when properly conducted. It is the interruption of such enjoyment and the destruction of such comfort that furnishes the ground of action, and it is no satisfaction to the injured party to be informed that it might have been done with more aggravation. The business is lawful; but such interruption and destruction is an invasion of private rights, and to that extent unlawful. It is not so much the manner of doing as the proximity of such a business to the adjacent occupant which causes the annoyance. A business necessarily contaminating the atmosphere to the extent indicated should be located where it will not necessarily deprive others of the enjoyment of their property, or lessen their comfort while occupying the same."

In *Dolata v. Berthelet Fuel & Supply Co.* (1949), 254 Wis. 194, 198, 36 N. W. 2d 97, relying on *Pennoyer,* this court concluded that even though a coal yard was operated properly, nevertheless, it, a socially and economically useful business, would be abated if it caused substantial damage to the adjoining plaintiff.

It appears clear that the doctrine of comparative injury is not entertained in Wisconsin in damage suits for nuisance. In *Abdella v. Smith* (1967), 34 Wis. 2d 393, 149 N. W. 2d 537, the doctrine was alluded to by a citation from Prosser. The case involved not an action for damages, but an injunction to abate the nuisance. The same problem was discussed in the earlier case of *Holman v. Mineral Point Zinc Co.* (1908), 135 Wis. 132, 115 N. W. 327, where, in an action for *damages* occasioned by *sulphurous* fumes, defendant sought to rely on the theory that injury to a socially and economically useful factory by the granting of relief would outweigh the possible or actual injury to the plaintiff. This court stated, in discussing a case cited by the parties therein:

"That was a suit to enjoin the operation of a copper smelter as a nuisance and for damages occasioned by the destruction of timber on near-by lands. It is there held that, where an owner of property cannot use the same at all without indirectly injuriously affecting the property of another, the sound discretion of a court of equity is invoked when it is appealed to and asked to abate such use as a nuisance, and in such case the court will consider the comparative injury which will result from the granting or refusing of an injunction, and that it will not be granted when it would cause a large loss to the defendant, while the injury to the plaintiff, if refused, will be comparatively slight and can be compensated by damages. That decision could only be applicable on the question of the abatement of the nuisance, as the right of the plaintiff to recover damages is distinctly recognized. As already stated, this is an action to abate the nuisance and for damages, and the complaint is not demurrable, if otherwise sufficient, simply because the court on final hearing might not grant all the relief that is prayed for. Sec. 3181, Stats. (1898), provides that if the plaintiff prevails he shall have judgment for damages and costs, and also for an abatement of the nuisance, unless the court shall certify that such abatement is unnecessary.

"Whether the court may apply the doctrine of comparative injury to the respective parties in rendering the judgment is not before the court for decision on this

appeal. The other grounds for demurrer were not urged upon the attention of the court and are treated as abandoned. We hold that the complaint states a cause of action, and that the demurrer was properly overruled." (pp. 137, 138.)

As in *Holman*, the question of comparative injury is not before us, since this is a suit for damages, not abatement of a nuisance. Defendant nevertheless urges us to adopt the rule of the Restatement, which he contends applies the rule to damage suits for nuisance. It should be pointed out, however, that the Restatement recognizes that:

"For the purpose of determining liability for damages for private nuisance, conduct may be regarded as unreasonable even though its utility is great and the amount of harm is relatively small . . . . It may be reasonable to continue an important activity if payment is made for the harm it is causing, but unreasonable to continue it without paying." Restatement, 4 *Torts*, p. 224, ch. 40.

Prosser, *supra*, page 621, too, states:

"In an action for damages, the relative hardship upon the plaintiff and the defendant is not material, once the nuisance is found to exist."

We therefore conclude that the court properly excluded all evidence that tended to show the utility of the Dairyland Cooperative's enterprise. Whether its economic or social importance dwarfed the claim of a small farmer is of no consequence in this lawsuit. It will not be said that, because a great and socially useful enterprise will be liable in damages, an injury small by comparison should go unredressed. We know of no acceptable rule of jurisprudence that permits those who are engaged in important and desirable enterprises to injure with impunity those who are engaged in enterprises of lesser economic significance. Even the government or other entities, including public utilities, endowed with the power of eminent domain—the power to take private property in

order to devote it to a purpose beneficial to the public good—are obliged to pay a fair market value for what is taken or damaged. To contend that a public utility, in the pursuit of its praiseworthy and legitimate enterprise, can, in effect, deprive others of the full use of their property without compensation, poses a theory unknown to the law of Wisconsin, and in our opinion would constitute the taking of property without due process of law.

We adhere to the rule of *Pennoyer v. Allen.* Although written in 1883, we believe it remains completely applicable under modern conditions. We conclude that injuries caused by air pollution or other nuisance must be compensated irrespective of the utility of the offending conduct as compared to the injury. Nor do we imply that a different rule should apply where the remedy sought is abatement rather than damages. That point is not considered herein. We consider that the rule of *Dolata* continues to be the law in Wisconsin where the action is for abatement.

We conclude, however, that the court erred in concluding that the evidence failed to show a diminution in the market value. The evidence was uncontradicted that the value of crops raised had diminished in value and that certain types of vegetation were dying out or had died out completely. It is clear that the nuisance has continued for several years and will continue for an indefinite period into the future.

The jury found there was a continuing nuisance. Under these circumstances, we conclude that the injury was permanent and that, as a matter of law, the market value of the land was diminished. *See* McCormick, *Damages* (hornbook series), p. 500, sec. 127. How much it was diminished we need not determine, since we are satisfied that there should be a new trial on the issue of diminution of market value only in regard to the real property of all plaintiffs.

We see no basis for the jury's conclusion that the market value of one of the farms was reduced by $500 and the value of the others not at all. Such a result— although there could have been a differential—is completely unsupported by the evidence.

We conclude that the plaintiffs are entitled to recover for the crops and damage to vegetation for the years complained of—1965 and 1966—as found by the jury, but after those years recovery cannot again be for specific items of damage on a year-by-year basis. Their avenue for compensation is for permanent and continuing nuisance as may be reflected in a diminution of market value. Of course, permitting a recovery now for a permanent loss of market value presupposes that the degree of nuisance will not increase. If such be the case, an award of damages for loss of market value is final. If, however, the level of nuisance and air pollution should be increased above the level that may now be determined by a jury, with a consequent additional injury the plaintiffs would have the right to seek additional permanent damage to compensate them for the additional diminished market value.

*By the Court.*—Judgment affirmed in part and reversed in part consistent with this opinion.