Harold KRUEGER, d/b/a Krueger's Lawn Capitol, Plaintiff-Respondent and Cross-Appellant,

v.

Dean W. MITCHELL and Lois Mitchell, Defendants-Appellants and Cross-Respondents.†

Court of Appeals

No. 81–247. *Submitted on briefs November 2, 1981.—Decided February 8, 1982.*
(Also reported in 317 N.W.2d 155.)

† Petition to review granted.

For the defendants-appellants the cause was submitted on the brief of *James J. Caldwell* of *Rummel, Caldwell, & Daly* of Oconomowoc.

For the plaintiff-respondent the cause was submitted on the brief of *Robert C. Burrell* and *Jeffrey S. Fertl* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   This is a private nuisance action involving the owners of a private airport and an adjacent landowner-businessman. A jury found that the airport was a nuisance to the adjacent landowner-businessman and awarded him $12,000. The trial court reduced the damages to $3,000, using the *Powers* rule.[1] The airport owners' major claim i. that the trial was unfairly prejudicial to them because the original complaint requested only an injunction, not damages. The trial court, however, permitted an amendment of the complaint on the first day of trial. On the other hand, the landowner-businessman

---

[1] *Powers v. Allstate Ins. Co.*, 10 Wis. 2d 78, 91–92, 102 N.W.2d 393, 400 (1960); *see also* sec. 805.15(6), Stats.

claims the court erred in reducing the damages award. Because the airport owners were not prejudiced and because the trial court had viable grounds to reduce the damages, we affirm.

Harold Krueger owns a lawn and garden equipment business located across the road from Capitol Drive Airport, a privately operated, public-serving airport owned by the Mitchells. Prior to 1978, the airport had two unpaved runways which had been formed by simply cutting swaths of grass. The direction of these two runways was such that planes took off and landed without flying over Krueger's establishment. In 1978, a paved runway was constructed, for safety reasons, in a line converging with Krueger's business. This new runway was constructed in such a direction to get the longest runway distance obtainable. As a result, planes obtained a much greater altitude on takeoff. When constructing the new runway, the owners decided that not only should the direction be changed for safety reasons but also that the new runway should be paved. This would be an improvement over grass because precipitation softened the condition of the grass field making it unsafe and unusable at times.

The thrust of Krueger's grievance was that the changes in direction and composition of the runway affected the enjoyment of his property. With the operation of the new runway, the number of planes taking off and landing doubled. As a result, planes took off from between fifteen and twenty times on an average weekday to thirty to forty times on busy days. In addition to the increase in volume, the airplanes flew over Krueger's building with a much greater frequency than they had before the construction of the new runway. This, according to Krueger, created substantial noise. Also, the airplanes flew over his building at about thirty feet. Further, a louder, twin-engine plane was now able to take off and

land at the airport. As a result, Krueger asserted that his conversations with customers were hampered because of airplane noise. He also claimed that the noise often prevented him from communicating with people on the telephone, that his building would shake when twin-engine planes flew overhead and that drinking cups often rattled. Finally, he noted that his mechanics often ran to the window when they heard the airplanes, thus disrupting work. Krueger concluded that the airport's activities created an unreasonable interference with his property because the noise from the airplanes was offensive to him.

Originally, Krueger's pleading prayed for an injunction. Krueger, in fact, at one time had moved for a temporary injunction but that motion was denied after a hearing on December 5, 1978. This date is significant, because following the conclusion of that hearing and the denial of Krueger's motion, Krueger asked the trial court for permission to amend the addendum clause to include damages. There was no objection by the Mitchells at the time, and the trial court granted the motion.

Almost two years later, a jury trial was commenced. During preliminary discussions prior to the start of trial, the Mitchells brought a motion *in limine*. They sought to foreclose the issue of damages on the ground that since an amended complaint claiming damages had never been prepared and served on them, only the claim for an injunction was properly before the court. After some colloquy, the trial court ruled that Krueger would be able to pursue damages.

The jury returned with a verdict of $12,000 total damages. Two thousand dollars of this verdict was for past inconvenience, annoyance and discomfort, with one juror dissenting. Ten thousand dollars was for future inconvenience, annoyance and discomfort, with two jurors dissenting. On motions after verdict, the trial court re-

duced damages to $500 for past inconvenience, annoyance and discomfort, and $2,500 for future damages. Krueger accepted the *Powers* modification but cross-appeals now that the Mitchells have appealed.

We hold that the Mitchells were not prejudiced by the trial court's decision to allow the damages issue to be tried. The scope of appellate review where an amendment of pleadings is challenged is whether the trial court has abused its discretion. *Wiegel v. Sentry Indemnity Co.*, 94 Wis. 2d 172, 184–85, 287 N.W.2d 796, 802–03 (1980). Discretion is defined as follows "[A] process of reasoning which depends on facts that are of record or reasonably derived by inference from the record and a conclusion based on a logical rationale founded on proper legal standards." *Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 55–56, 252 N.W.2d 81, 84 (1977).

In determining whether the trial court in this case abused its discretion, we start with the following citation from sec. 802.09(2), Stats.:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits.

Our review of the record indicates that notice of leave to amend the pleadings was given almost two years prior to the date of trial. The trial court had knowledge that an oral motion for permission to amend the pleadings to include damages was made and granted on the record two years before trial in open court. No objection to the motion was made at that time. The Mitchells knew of the motion and also knew of the granting of this motion.

They even located the transcript of the motion with ease when arguing the motion *in limine.*

Moreover, it is incongruous to us that there would be a jury trial set in a matter in which only a request for injunction was to be heard. Generally, a request for an injunction does not go to the jury; the request is tried to the court. *See State v. Ross*, 259 Wis. 379, 388, 48 N.W. 2d 460, 465 (1951). Since both parties knew that this case was to be tried to a jury, we can come to no other conclusion than that the Mitchells knew this case was not merely an injunction case. Therefore, there is a substantial basis, derived from the record, to support the trial court's ruling.

It appears from the record that the Mitchells failed to satisfy the trial court that the admission of damages evidence would prejudice them in maintaining an action or defense upon the merits.

The Mitchells claim, however, that had they known damages were going to be the subject of a jury trial, they would have deposed Krueger regarding damages. They contend that they, in fact, tried to depose Krueger on the subject of damages, but Krueger's attorney objected to the questions on the ground that damages were not going to be an issue for trial. The Mitchells' claim lacks merit. Their argument fails to distinguish between causes of action in which discomfort alone is alleged as an injury, as in the principal case, and those in which it merely accompanies such traditional nuisance harms as physical injury to land and fixtures, depreciation of property value, or creation of conditions deleterious to health. Obviously, in this case, the Mitchells would be foreclosed from pursuing evidence regarding the showing of any monetary loss to real estate or business or loss due to sickness. With the deposition questions being circumscribed, the Mitchells have not explained to

this court what they could have learned from the depositions that they did not already know. They were already aware of Krueger's complaints of discomfort, annoyance and personal inconvenience. If more could have been learned that would have helped the Mitchells' preparation regarding Krueger's general complaints, it is not apparent. We conclude that the Mitchells have not shown that prejudice resulted, and, therefore, no abuse of discretion has been shown.

The Mitchells' second argument contests the finding that a nuisance existed. The Mitchells cite *Kuntz v. Werner Flying Service, Inc.*, 257 Wis. 405, 410, 43 N.W. 2d 476, 479 (1950), for the proposition that an airport is not a nuisance *per se*. Since there is no question as to the lawfulness of airports, the Mitchells conclude that the court should have directed a verdict as a matter of law against Krueger because airports cannot be considered nuisances.

The Mitchells are wrong. Although an airport may not be a nuisance *per se,* a business or industry which is not a nuisance *per se* (*e.g.,* an airport) may be conducted in such a manner or place so as to be a nuisance in fact. *Sohns v. Jensen*, 11 Wis. 2d 449, 460, 105 N.W.2d 818, 824 (1960). Thus, although an airport may not be a nuisance *per se,* the noise from the planes landing and taking off may become a nuisance in fact when it interferes with the use and enjoyment of property by persons of ordinary sensibilities. In such a case, the fact that the business is lawful or is conducted in a reasonable and proper manner is no defense against a claim for nuisance. *Holman v. Mineral Point Zinc Co.*, 135 Wis. 132, 136, 115 N.W. 327, 329 (1908). The facts in this case are such that the jury could find that a nuisance in fact existed. Thus, the claim of the Mitchells is unavailing.

The Mitchells also argue that the utility of airports to society overshadows any nuisance it may create. *Jost v. Dairyland Power Cooperative,* 45 Wis. 2d 164, 176, 172 N.W.2d 647, 653 (1973), has held, however, that conduct may be regarded as unreasonable even though its utility is great and the amount of harm small. It may be reasonable to continue an important activity if payment is made for the harm it is causing but unreasonable to continue it without pay. *Id.* Therefore, the Mitchells' policy argument is uncompelling.

The Mitchells' final argument is that annoyance and inconvenience cannot emerge as the sole basis upon which a damages recovery is predicated. The Mitchells assert that there was no evidence indicating Krueger's business was being harmed in any way, nor was there evidence of any depreciation of property value or the creation of conditions hazardous to Krueger's health. The Mitchells conclude that the damages claim should fail altogether because the damages that were shown were so trifling as not to amount to damages at all.

We disagree. A plaintiff may recover damages for personal inconvenience, annoyance and discomfort caused by the existence of a nuisance even in the absence of any showing of monetary loss or of bodily injury or illness. This has long been widely recognized as the majority rule in the United States.[2] The Wisconsin Supreme

[2] *Baltimore & Potomac R.R. Co. v. Fifth Baptist Church,* 108 U.S. 317 (1883); *Judson v. Los Angeles Suburban Gas Co.,* 106 P. 581 (Cal. 1910); *Chandler v. City of Olney,* 87 S.W.2d 250 (Tex. 1935). *See also Griffin v. Northridge,* 153 P.2d 800 (Cal. 1944); *Dauberman v. Grant,* 246 P. 319 (Cal. 1926); *Central Georgia Power Co. v. Pope,* 80 S.E. 642 (Ga. 1913); *Van Fossen v. Clark,* 84 N.W. 989 (Iowa 1901); *Roukovina v. Island Farm Creamery Co.,* 200 N.W. 350 (Minn. 1924); *Laurel Equip. Co. v.*

Court has never had the occasion to adopt this rule.[3] However, in *McCann v. Strang,* 97 Wis. 551, 554, 72 N.W. 1117, 1118 (1897), the supreme court did state that:

Every unlawful use by a person of his own property in such a way as to cause an injury to the property or rights of another, and producing material annoyance, inconvenience, discomfort, or hurt, and every enjoyment by one of his own property, which violates the rights of another in an essential degree, constitutes an actionable nuisance.

We recognize that allowing damages recovery solely upon the basis of annoyance and inconvenience is in sharp contrast with the contemporary general tort doctrines rigidly restricting suits for emotional disturbance recovery as an independent cause of action. However, this contrast is allowed to exist in the law because of the peculiar nature of the private nuisance theory. The essence of private nuisance is the "interference with the use and enjoyment of land." W. Prosser, Handbook of the Law of Torts, 591 (4th ed. 1971). The reason for allowing this contrast was best explained by the Restatement of Torts as follows:

This interest in freedom from annoyance and discomfort in the use of land is to be distinguished from the inter-

---

*Matthews,* 67 S.2d 258 (Miss. 1953); *Gossett v. Southern R.R. Co.,* 89 S.W. 737 (Tenn. 1905).

[3] The cases in Wisconsin all dealt with damages more substantial than personal discomfort, annoyance and inconvenience or asked for injunction only. They are: *Kellogg v. Village of Viola,* 67 Wis. 2d 345, 346, 227 N.W.2d 55, 56 (1975) (damages to mink herd); *Steiger v. Nowakowski,* 67 Wis. 2d 355, 360, 227 N.W.2d 104, 107 (1975) (damages to wall); *Jost v. Dairyland Power Coop.,* 45 Wis. 2d 164, 170–71, 172 N.W.2d 647, 650–51 (1969) (damages to crops and land); *Rachlin v. Drath,* 26 Wis. 2d 321, 326, 132 N.W.2d 581, 583 (1965) (injunction only); and *Hartung v. Milwaukee County,* 2 Wis. 2d 269, 281, 86 N.W.2d 475, 482 (1957) (injunction only).

est in freedom from emotional distress . . . . The latter is purely an interest of personality and receives very limited legal protection, whereas the former is essentially an interest in the usability of land and, although it involves an element of personal tastes and sensibilities, it receives much greater legal protection.

Restatement (First) of Torts, § 822, Comment e (1939). Thus, it is significant that annoyance and inconvenience resulting from nuisance are often scrupulously distinguished from other forms of emotional distress as perhaps importing more of a physical, as distinct from mental, characteristic than pure mental disturbance, thereby appearing less susceptible of counterfeit by the supersensitive or avaricious plaintiff. Note, *Torts—Nuisance —Personal Annoyance as Sole Injury*, 55 Mich. L. Rev. 310, 311 (1956). Consequently, unpleasant odors, sights and noises have provided grounds for nuisance recovery solely upon a showing of substantial annoyance, harassment, inconvenience or discomfort. *Id.*

We conclude that this rule, implicitly recognized by *McCann*, should be explicitly endorsed in Wisconsin.

This brings us to Krueger's cross-appeal regarding the trial court's use of the *Powers* rule to reduce his damages. It is true that the question of whether a particular noise under a particular circumstance constitutes a nuisance is for the trier of fact. *Kellogg v. Village of Viola*, 67 Wis. 2d 345, 353, 227 N.W.2d 55, 60 (1975). The trial court has the authority, however, to reduce the verdict if the trial court finds the verdict excessive. *Powers v. Allstate Insurance Co.*, 10 Wis. 2d 78, 91–92, 102 N.W.2d 393, 400 (1960). Our scope of review is explained in *Bash v. Employers Mutual Liability Insurance Co.*, 38 Wis. 2d 440, 453–54, 157 N.W.2d 634, 642 (1968). The standard is whether the trial court has abused its discretion. Both the trial court and this court must view all of

the evidence bearing on damages and then, viewing that evidence reasonably as a whole, consider it in the light most favorable to the plaintiff. If there exists a reasonable basis for the trial court's determination after resolving any direct conflicts in the testimony in favor of the plaintiff, this court will uphold the trial court's decision.

Here, the trial court provided a reasonable basis for its determination and, before doing so, resolved any direct conflicts in the testimony in favor of Krueger. We cannot improve upon the trial court's decision and, thus, have included the pertinent parts of the decision below.[4] Suffice it to say that, although there was more

---

[4] The pertinent parts of the trial court's decision are as follows.

Mitchell explained that his motivating consideration in his decision to construct and pave a new runway was safety, and that the hard smooth surface of the new runway allows airplanes to land and takeoff in shorter distances, as against using rougher turf runways. No evidence of any mishaps in the two years of the new runway's operation was introduced. Neither was there any evidence introduced with respect to flashing lights from airplanes at night, providing a source of irritation to plaintiff.

Krueger, at the time of trial, was 50 years of age. He spends about 55 to 60 hours a week inside his lawn and garden shop. He testified that he plans to continue operating his business for another 15 to 20 years.

The Capitol Drive Airport is located in a rural area, and is surrounded predominantly by farmers' fields and marsh lands. There were no witnesses, other than Krueger, who testified that they heard the airplane noise while in Krueger's shop or were otherwise disturbed thereby.

It is also important to note the character of the interest the plaintiff seeks to protect. Plaintiff's property is used as a business, a lawn and garden store, not as a homestead. The worth and utility of the property and any impairment thereof must therefore be judged more on the suitability of the property to the carrying on of that business than on considerations of comfort and enjoyment of the owners. Plaintiff did not produce any evi-

than just a trifling annoyance involved in this case, there was no substantial evidence that the plaintiff suffered a large degree of discomfort, annoyance and incon-

dence that would indicate that his business has been in any way harmed or diminished by the presence and operation of defendant's airport. He likewise offered no evidence that the value of his property and business had decreased because of the defendants' construction of a new runway.

It should be remembered that the plaintiff depends on easy public access to his place of business for the furtherance thereof, and consequently has chosen to locate alongside a busy four lane divided roadway.

Were the case tried before the court rather than a jury, this court would have little difficulty in finding that disturbances and inconveniences which plaintiff claims were of significant harm to him, were in this court's perception to be but slight and petty annoyances. What constitutes a nuisance in present times is to be determined from modern conditions and some weight must be given "social considerations", as well, using that term in its broadest sense. *Ballstadt v. Pagel*, 202 Wis. 484, 232 N.W. 862 (1930).

It is said that life in organized society and especially in populous communities involves an unavoidable clash of individual interests. Practically all human activities, unless carried on in a wilderness, interfere to some extent with others or involve some risk of interference, and these interferences range from mere trifling annoyances to serious harms.

. . . .

The court does recognize that evidence was presented in the trial which a reasonable jury could find the unreasonableness of the noise and its significant harm. Indeed the jury in this case appears to have been extremely conscientious in its finding of a nuisance, requesting several times to be reinstructed on the elements of nuisance and the court responding to such request, and the jury ultimately reaching its finding unanimously.

Consequently, since the court cannot say that no reasonable jury could find a nuisance in the case, it reluctantly defers to and accepts the jury's finding that the operation of defendants' airport constitutes a private nuisance to the plaintiff.

[T]he court cannot say as much for the jury's finding of damages, since there was no evidence produced by plaintiff which would show that his business operations were seriously affected by the nuisance, or that there was no loss of value in the property,

venience such as to justify a $12,000 verdict. We conclude, using the *Bash* test, that the trial court did not abuse its discretion in reducing the jury award.

*By the Court.*—Judgment affirmed.

---

for the inconveniences, such as they were, were truly scant from a damage perspective. There was no testimony introduced showing plaintiff's probable length of life expectancy, other than his age, the number of hours he spends working, how many years he intends to work in the shop, and his plan for expansion. Such evidence is inadequate to establish an award of $12,000, and the court finds such amount to be excessive. Such finding, however, by the jury is not due to perversity or prejudice.

While a nuisance may be found from the facts of this case, those facts, which have been extensively examined hereinbefore, also demonstrate that his nuisance is limited and relatively innocuous. This court therefore finds that, upon the evidence produced at trial, the sum of money which will reasonably compensate the plaintiff for his inconvenience, annoyance and discomfort between 1978 and the date of the trial is $500.00, and that the sum of money which will reasonably compensate the plaintiff for the defendants' continuance of the nuisance in the future is $2,500.00, for a total of $3,000.00.

In accordance with the rule of *Powers v. Allstate Ins. Co.,* 10 Wis. 2d 78, 102 N.W. 2d 393 (1960), and sec. 805.15(6), the plaintiff is afforded the option of accepting the reduced award of $3,000.00, remitting the sum of $9,000.00, or having a new trial on the issue of damages only. Plaintiff may make his election within 10 days of this order.