PHYSICIANS PLUS INSURANCE CORPORATION, Subrogated-Plaintiff-Respondent,

v.

MIDWEST MUTUAL INSURANCE COMPANY, Defendant,

THERESA MUTUAL FIRE INSURANCE COMPANY, Donald Franke, Wisconsin Municipal Mutual Insurance Company, Dodge County, Robert Embertson, Rural Mutual Insurance Company, Township of Leroy and Linus Schraufnagel, Defendants-Appellants-Petitioners.

ESTATE OF Timothy J. SMITH, Deceased, Plaintiff-Respondent,

STATE of Wisconsin, Department of Health and Family Services, Division of Health, Subrogated-Plaintiff-Respondent,

v.

THERESA MUTUAL INSURANCE COMPANY, Don-Er Farms, Inc., Donald Franke, Ermanelda Franke, Wisconsin Municipal Mutual Insurance Company, Dodge County, Robert Henken, Highway Commissioner for Dodge County, Robert Embertson, Rural Mutual Insurance Company, and Township of Leroy, Defendants-Appellants-Petitioners.

Supreme Court

77

*No. 00–1836. Oral argument January 9, 2002.—Decided June 28, 2002.*

## 2002 WI 80

(Also reported in 646 N.W.2d 777.)

82

84

85

For defendants-appellants-petitioners, Theresa Mutual Insurance Company, Don-Er Farms, Inc., Donald Franke and Ermanelda Franke, there were briefs by *Arnold P. Anderson* and *Mohr & Anderson, S.C.,* Madison, and *Thomas E. Goss, Jr.* and *Mueller, Goss & Possi, S.C.,* Milwaukee, and oral argument by *Arnold P. Anderson* and *Thomas E. Goss, Jr.*

For defendants-appellants-petitioners, Dodge County, Robert Embertson, Wisconsin Municipal Insurance Company and Robert Henken, there were briefs by

*Robert E. Storck* and *Storck, Schnabl & Madden,* May-ville, and oral argument by *Robert E. Storck.*

For defendants-appellants-petitioners, Township of Leroy, Linus Schraufnagel and Rural Mutual Insurance Company, there were briefs by *Phillip J. Eckert* and *O'Meara Law Form, LLP,* West Bend, and oral argument by *Phillip J. Eckert.*

For plaintiff-respondent, Timothy J. Smith, there was a brief by *Eric A. Farnsworth* and *DeWitt Ross & Stevens, S.C.,* Madison, and oral argument by *Eric A. Farnsworth.*

¶ 1. N. PATRICK CROOKS, J. This is a review of a published opinion of the court of appeals, *Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co.,* 2001 WI App 148, 246 Wis. 2d 933, 632 N.W.2d 59, affirming the order of the Dodge County Circuit Court granting partial summary judgment in favor of Timothy J. Smith. The circuit court and the court of appeals both concluded that the petitioners were liable for maintaining a public nuisance, consisting of tree branches obstructing the view of a stop sign at a highway intersection. Each petitioner, Theresa Mutual Insurance Company, Don-Er Farms, Inc., Donald and Ermanelda Franke, (hereinafter collectively referred to as "the Frankes" or "the homeowners"); Wisconsin Municipal Mutual Insurance Company, Dodge County, Robert Henken, Highway Commissioner for Dodge County, Robert Embertson (hereinafter collectively referred to as "Dodge County"); and Rural Mutual Insurance Company and the Township of Leroy, (hereinafter collectively referred to as the "Town of Leroy"), individually claims it is excluded as a matter of law, from liability for failing to remove the tree branches obstructing the view of a stop sign.

¶ 2. We begin reviewing this case by discussing the important, but often confusing, relationship between public nuisance and negligence. Both the circuit court and the court of appeals held that the defendants were liable for maintaining a public nuisance. We begin our analysis by defining public nuisance as a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community. *See Schiro v. Oriental Realty Co.*, 272 Wis. 537, 546, 76 N.W. 355 (1956); *see also State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 520, 311 N.W.2d 650 (1981) (noting that the court considers many factors in concluding that a public nuisance exists).[1] We then discuss this court's decision in *Brown v. Milwaukee Terminal Railway Co.*, 199 Wis. 575, 224 N.W. 748, *on reargument*, 199 Wis. 588, 227 N.W. 385 (1929), which we conclude provides the proper framework for determining liability here. We work to clarify the relationship between public nuisance and negligence and hold that liability for maintaining a public nuisance is based on the following elements, plus public policy. First, the existence of the public nuisance itself; second, actual or constructive notice of the public nuisance; and third, that the failure to abate the public nuisance is a cause of the plaintiff's injuries. For the purposes of comparing and apportioning responsibility for the accident and for determining contribution among culpable parties, we conclude that when all of

---

[1] "The primary function of nuisance as a separate topic in the law of torts is to mark out the area within which it is unreasonable for one to subject his neighbors or the public to noise, vibrations, fumes, immorality or the risk of physical harm." Warren A. Seavey, *Nuisance: Contributory Negligence and Other Mysteries*, 65 Harv. L. Rev. 984, 995 (1952).

those elements are affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se. We also look to public policy considerations because we conclude that similar to liability for negligence, liability for maintaining a public nuisance can be limited on public policy grounds.

¶ 3. Applying this framework to the facts presented here, we conclude that the circuit court properly concluded that the tree branches obstructing the view of the stop sign resulted in a public nuisance as a matter of law. We conclude from the photographic evidence depicting the tree and the stop sign on the date of the accident, that there are no genuine issues of material fact to preclude a summary judgment determination that the condition was a public nuisance. Furthermore, we conclude that there are no genuine issues of material fact regarding whether all three defendants had actual or constructive notice of the condition. The tree branches were obstructing the view of the stop sign for at least two to three months before the accident, and this is a sufficient length of time to impute notice to the Frankes, Dodge County, and the Town of Leroy. Regarding whether the failure to abate the obstructed view of the stop sign was a cause of the accident, we affirm the court of appeals' conclusion that disputed reasonable inferences preclude summary judgment on that issue. We further conclude, however, that if causation is established at trial, for the purposes of comparing and apportioning responsibility and for determining contribution among culpable parties, a defendant's failure to abate the public nuisance is analogous to negligence per se.

¶ 4. We then turn to each individual defendant's arguments that public policy considerations relieve each of liability. We reject all of the defendants' public policy arguments and conclude that the Frankes, Dodge County and the Town of Leroy all had a relationship to

90

either the tree involved or the stop sign at issue that resulted in a duty to abate the public nuisance—to trim the branches obstructing the view of the stop sign. We further conclude that public policy does not relieve any of the defendants of liability.[2]

## I. FACTS

### A. The accident

¶ 5. For the purposes of this case, the pertinent facts are not in dispute. On July 21, 1996, Timothy J. Smith (hereinafter Smith) and his passenger, Tracey

[2] We recognize that the parties also asked us to review the court of appeals' recommendation to the circuit court regarding the form of the jury verdict on remand. In its conclusion, the court of appeals suggested that the jury might be asked to "apportion responsibility for the accident between the obscured stop sign and Diane Smith's negligence (and possibly Smith's contributory negligence . . . )." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 67, 246 Wis. 2d 933, 632 N.W.2d 59. The Frankes argue that the court of appeals' jury verdict recommendation was improper for several reasons. We note, however, that the parties' arguments were based on the court of appeals' slip opinion, not the language quoted above in the published opinion. Before publishing, the court apparently revised the language relating to the verdict form. The change in language significantly altered what was characterized as a recommendation, to merely a suggestion. While we do not address directly the parties' arguments regarding the court of appeals' verdict form suggestion, we direct the parties' attention to ¶ 32 of this opinion. In that paragraph, we discuss the analogy to negligence per se. We conclude that for the purposes of comparing and apportioning responsibility for the accident, and for determining contribution among culpable parties, when all of the elements to establish liability for maintaining a public nuisance have been affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se.

Leistico (hereinafter Leistico), were injured in an accident at the intersection of Highway Z and Ledge Road, in the Town of Leroy, in Dodge County. Smith was driving his motorcycle north on Highway Z and Diane C. Smith (hereinafter Diane), of no relation to Timothy Smith, was driving her car eastbound on Ledge Road. There is a stop sign requiring traffic on Ledge Road to stop for traffic on Highway Z; however, Diane failed to stop and her vehicle collided with Smith's motorcycle. Diane stated that she failed to see the "stop ahead" sign and failed to stop for the stop sign because there were tree branches obstructing the visibility of the stop sign. Diane later admitted to drinking approximately four or five beers the day of the accident, that she had an open can of beer in her car, and that after the accident she removed full beer cans from her car and hid them in a culvert.

B. The tree and the stop sign

¶ 6. The tree at issue is located on Donald and Ermanelda[3] Frankes' property and is partially within the Town of Leroy's highway right-of-way. The day after the accident, Town of Leroy personnel inspected the tree branches and decided to remove them. Linus Schraufnagel, the Frankes' neighbor and Town of Leroy Chairman, and one of the homeowners, Donald Franke, subsequently trimmed the branches at issue.

¶ 7. The stop sign requiring traffic to stop on Ledge Road was installed by Dodge County and is within the County's right-of-way. Highway Z is an arterial highway. The speed limit on both Highway Z and Ledge Road is 55 miles per hour.

---

[3] We note that at the time of the accident, Ermanelda Franke was the Town of Leroy Assessor.

¶ 8. Although not aimed at checking for foliage obstruction, Dodge County personnel checked the visibility of signs in the county on an annual basis. The purpose of the inspection was to determine the reflectivity of county signs and was usually done at night in November. In addition to the county inspection, Town of Leroy personnel inspected all of its roads and ensured its stop signs were in good condition in April of each year. The town, however, also does not inspect specifically for obstruction of stop signs.

C. Trial Court proceedings

¶ 9. Following the accident, Smith and his passenger, Leistico, filed separate actions in Dodge County Circuit Court for injuries resulting from the collision with Diane Smith. The plaintiffs both filed suit against the Frankes, the Town of Leroy and Dodge County,[4] claiming that all were either actually or constructively aware of the developing hazard and all were negligent in failing to take action to remedy the hazard, including trimming the branches of the tree obstructing the view of the stop sign. Smith also claimed that the Frankes' maintenance of their tree constituted a nuisance to the safe and unobstructed use of the highway. For purposes of pretrial administration and trial, the two cases were consolidated.

¶ 10. All three defendants, the Frankes, the Town of Leroy, and Dodge County, moved for summary judg-

---

[4] Diane Smith and her insurance company subsequently entered into Pierringer releases with Leistico and were dismissed from her case. Diane and her insurance company also entered into a Pierringer release with Timothy Smith, but did so even before Smith commenced his lawsuit against the other defendants. *See Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

ment claiming they had no obligation to trim the tree in order to maintain visibility of the stop sign. On June 18, 1998, the Honorable Andrew P. Bissonnette, denied the motions. The Frankes, Theresa Mutual, the Town of Leroy, and Dodge County petitioned the court of appeals to review the denials of the motions for summary judgment; however, all three petitions were denied. A trial date was subsequently set for January 10, 2000. Leistico then voluntarily dismissed her claim, but her subrogated health carrier, Physicians Plus Insurance Company, remains a party.

¶ 11. In December 1999, the court, in agreement with the parties, took the case off of the trial calendar and invited motions for summary judgment. Smith filed a motion for partial summary judgment on liability against the defendants, the Frankes, the Town of Leroy, and Dodge County. The three defendants also renewed their motions for summary judgment. On May 10, 2000, after briefing and arguments, the circuit court issued an order finding the Frankes, the Town of Leroy, and Dodge County all causally negligent as a matter of law in failing to meet their duties to trim the tree and remedy the hazard. On July 6, 2000, the circuit court issued a supplement to its decision and order. The court concluded that in failing to trim the tree and render the stop sign visible on the date of the accident, the defendants had maintained a public nuisance.

D. Court of Appeals' decision

¶ 12. The Frankes, the Town of Leroy, and Dodge County petitioned for leave to appeal the circuit court's non-final order and the Court of Appeals, District IV, granted the petitions. Relying on *Brown v. Milwaukee Terminal Railway Co.,* 199 Wis. 575, 224 N.W. 748, *on reargument,* 199 Wis. 588, 227 N.W. 385 (1929), the

94

court held that each defendant had a duty to trim the offending branches. *Physicians Plus,* 2001 WI App 148, ¶ 64. The court recognized that the term "duty" is usually reserved for negligence cases, but stated that "duty" really presents a question of public policy: "Should a party whose act or omission has caused harm to another be shielded from liability on public policy grounds?" *Id.* at ¶ 11. Based on the statutes and case law, the court concluded that each defendant was liable for maintaining a nuisance. Although the defendants' acts did not create the nuisance, the liability was based on whether each defendant had "notice of the existence of the danger." *Id.* at ¶ 10. Before engaging in an analysis specific to each defendant, the court noted that these three defendants are the only persons or entities who might possibly bear some responsibility and that "If each is excluded from liability on public policy grounds (that is, if none 'had a duty' to eliminate the hazard), the result would be that an obvious hazard to public safety could continue to exist, with no one having any obligation to correct it." *Id.* at ¶ 14. "We would be hard pressed to conclude that the public policy of our state, as reflected in its statutes and case law, would support such a result." *Id.* (footnote omitted).

¶ 13. Regarding the Frankes' liability, the court of appeals rejected the arguments that the reasoning in *Brown* was limited to "falling dead tree" cases and that this case relates to the Frankes' duty to maintain the stop sign. *Id.* at ¶¶ 16–17. Rather, the court emphasized that the Frankes' liability is based on "their failure to eliminate a safety hazard created by a tree growing in their yard." *Id.* at ¶ 19. Finally, the court rejected the Frankes' public policy arguments. The court rejected the argument that imposing liability here creates "no

logical stopping point," *Id.* at ¶ 27, and the court refused to extend the public policy rationale of *Walker v. Bignell,* 100 Wis. 2d 256, 301 N.W.2d 447 (1981) (public policy exclusion from liability for municipalities regarding keeping highway intersections clear of visual obstructions). *Physicians Plus,* 2001 WI App 148, ¶ 26.

¶ 14. The court of appeals then turned to Dodge County's duty to ensure that the tree branches did not obscure visibility of the stop sign. The court rejected Dodge County's argument that the public policy considerations in *Walker* preclude municipalities[5] from liability for failure to cut vegetation. The court concluded that *Walker* did not affect the holding in *Naker v. Town of Trenton,* 62 Wis. 2d 654, 215 N.W.2d 38, *on rehearing,* 62 Wis. 2d 660, 217 N.W.2d 665 (1974), holding that a municipality's failure to trim foliage obscuring a stop sign is actionable. *Physicians Plus,* 2001 WI App 148, ¶ 26. The court therefore refused to extend *Walker* from general visibility at intersections to circumstances involving a traffic control sign. *Id.* at ¶ 31. The court found further support for its conclusion not to extend *Walker* in Wis. Stat. § 349.065 (1995–1996)[6] directing

---

[5] We recognize that, strictly speaking, a county is generally classified as a quasi-municipality. *City of Madison v. Hyland, Hall & Co.,* 73 Wis. 2d 364, 372, 243 N.W.2d 422 (1976). Like the court of appeals, however, we use the term "municipality" in this case to refer to both the Town of Leroy and Dodge County.

[6] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

Wisconsin Stat. § 349.065 states:

**349.065 Uniform traffic control devices.** Local authorities shall place and maintain traffic control devices, upon highways under their jurisdiction to regulate, warn, guide or inform traffic. The design, installation and operation or use of new traffic control devices placed and maintained by local authorities after the

local authorities to maintain traffic control devices, and the Department of Transportation's manual[7] requiring municipalities to pay special attention to ensure that "weeds, trees, [and] shrubbery . . . do not obscure the face of any sign." *Id.* at ¶ 34. The court also rejected Dodge County's argument that § 86.03(3) and (4)[8] prohibit the county from trimming the branches of the

adoption of the uniform traffic control devices manual under s. 84.02(4)(e) shall conform to the manual. After January 1, 1977, all traffic control devices placed and maintained by local authorities shall conform to the manual.

The court also cited § 84.02(4)(e), which states:

(e) The department shall adopt a manual establishing a uniform system of traffic control devices for use upon the highways of this state. The system shall be consistent with and, so far as practicable, conform to current nationally recognized standards for traffic control devices.

[7] All traffic signs should be kept in proper position, clean and legible at all times.

To insure adequate maintenance, a suitable schedule for inspection, cleaning and replacement of signs should be established. Employees of the highway department, police and other governmental employees whose duties require that they travel on the highways should be encouraged to report any damaged or obscured signs at the first opportunity.

Special attention and necessary action should be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign.

[8] Wisconsin Stat. § 86.03(3) and (4) state:

(3) PLANTING TREES AND SHRUBS IN HIGHWAY. Any person owning or occupying land adjoining any highway may, with the approval of the public authority maintaining the highway, plant, cultivate and maintain trees, shrubs or hedges on the side of the highway contiguous to and within 10 feet of that person's land. Such trees, shrubs or hedges shall be cut or removed only by the owner or occupant of the abutting land or by the public authority having control of the highway.

Frankes' tree. Relying on § 83.015(2)(a),[9] the court concluded that the county was not powerless to trim the tree branches, and that "even if it could only act by requesting or requiring others to trim the offending branches . . . it had a 'duty' to do so." *Id.* at ¶ 36.

¶ 15. Finally, the court addressed the Town of Leroy's liability and specifically rejected the argument that several statutes, specifically Wis. Stat. § 349.065, § 83.025,[10] and § 81.01(10)[11], establish a public policy

---

(4) CUTTING OR INJURING TREES ON HIGHWAY. No person shall cut down, break, girdle, bruise the bark or in any other manner injure, or allow any animal under that person's control to injure, any public or private trees, shrubs or hedges growing within the highway, except as the owner thereof or the public authority maintaining the highway may cut down, trim and remove trees, shrubs and hedges for the purpose of and conducing to the benefit and improvement of the owner's land or the highway facility.

[9] Wisconsin Stat. § 83.015(2)(a) states:

(2) POWERS AND DUTIES. (a) Except as provided under par. (b), the county highway committee shall purchase and sell county road machinery as authorized by the county board, determine whether each piece of county aid construction shall be let by contract or shall be done by day labor, enter into contracts in the name of the county, and make necessary arrangements for the proper prosecution of the construction and maintenance of highways provided for by the county board, enter private lands with their employes to remove weeds and brush and erect or remove fences that are necessary to keep highways open for travel during the winter, direct the expenditure of highway maintenance funds received from the state or provided by county tax, meet from time to time at the county seat to audit all payrolls and materials claims and vouchers resulting from the construction of highways and perform other duties imposed by law or by the county board.

[10] Wisconsin Stat. § 83.025 allows county boards to make changes in the county trunk highway system.

[11] Wisconsin Stat. § 81.01(10) states: "(10) Enter any private lands with their employes and agents for the purposes of

prohibiting the Town's liability for a hazard created by a condition in the Town's right-of-way. Relying on provisions in Chapter 81,[12] the court stated that the statutes "indicate public policies which obligate towns to maintain and supervise town roads, and which empower them to remove impediments to safe travel occasioned by vegetation growing along town roads." *Id.* at ¶¶ 38–39. The court also rejected the Town's argument that the County's "non-delegable" duty to maintain the stop sign precludes the Town's liability. *Id.* at ¶¶ 41–42.

¶ 16. After concluding that none of the defendants were precluded from liability, the court discussed the circuit court's application of nuisance and negligence concepts. The court then concluded that there were no genuine issues of material fact to preclude summary judgment that the tree branches created a nuisance and that each of the defendants knew or should have known of the condition. *Id.* The court further concluded, however, that the issue of causation was inappropriate for summary judgment on the present record.

¶ 17. In conclusion, the court discussed how responsibility should be apportioned, suggesting to the trial court that the verdict form used in products liability cases—apportioning causal negligence between the product and plaintiff—"may be suitable on the

removing weeds and brush and of erecting or removing such fences as may be necessary to keep highways reasonably free from snow and open for travel during the winter season."

[12] The court relied on both Wis. Stat. § 81.01 and § 81.15. Although the court of appeals cited § 81.15, it promptly recognized that the town's liability could not be based on that statute because there is no allegation of a "highway defect."

present facts." *Id.* at ¶ 67. The court stated, "[T]he jury might be asked to apportion responsibility for the accident between the obscured stop sign and Diane Smith's negligence (and possibly [Timothy] Smith's contributory negligence . . . .)" *Id.*

## II. STANDARD OF REVIEW

¶ 18. We independently review the circuit court's grant or denial of summary judgment by applying the same standards and methods utilized by the circuit court, and benefiting from the analyses of the circuit court and the court of appeals. *See Minnesota Fire & Cas. Ins. Co. v. Paper Recycling,* 2001 WI 64, ¶ 8, 244 Wis. 2d 290, 627 N.W.2d 527. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Wis. Stat. § 802.08(2). To defeat summary judgment, the nonmoving party must demonstrate more than a mere existence of some alleged factual dispute; there must be a genuine issue of material fact. *Baxter v. DNR,* 165 Wis. 2d 298, 312, 477 N.W.2d 648 (1991). "A factual issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

## III. PUBLIC NUISANCE AND NEGLIGENCE

¶ 19. We begin first by defining public nuisance, and then reviewing the seminal case that links public nuisance and negligence concepts, *Brown v. Milwaukee*

*Terminal Railway Co.,* 199 Wis. 575, 224 N.W. 748, *on reargument,* 199 Wis. 588, 227 N.W. 385 (1929). We then review the record to determine whether summary judgment is appropriate on the issue of whether the tree branches obscuring the stop sign resulted in a public nuisance as a matter of law. Specifically, we examine the record to determine the existence of the public nuisance itself, actual or constructive notice of the public nuisance, and whether the failure to abate the public nuisance was a cause of the plaintiff's injuries.

¶ 20. By first focusing on the relationship between public nuisance and negligence, we attempt to clarify that relationship as much as possible, given the somewhat confusing precedent.[13] Based on this court's precedent, mainly *Brown,* we hold that negligence and nuisance concepts overlap in several respects. First, liability for maintaining a public nuisance can be based on either negligent or intentional conduct that maintains a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community. Second, both notice and causation, concepts oftentimes reserved for negligence cases, are required to establish liability for maintaining a public nuisance. Third, for the purposes of comparing and apportioning responsibility for the accident, and for determining contribution among cul-

---

[13] As this court has recognized, nuisance is a "slippery term," and often the best way to determine whether a nuisance exists is by determining whether or not there is liability for the activity or condition. *Wisconsin Power & Light Co. v. Columbia County,* 3 Wis. 2d 1, 10, 87 N.W.2d 279 (1958); *see also Schiro v. Oriental Realty Co.,* 272 Wis. 537, 545, 76 N.W. 355 (1956) ("It would be difficult to find a term which has been the subject of more mystifying confusion of utterance in the reports and texts.").

pable parties, we conclude that when all of the elements to establish liability for maintaining a public nuisance are affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se. Finally, similar to liability for negligence, liability for maintaining a public nuisance can be limited by public policy considerations.

¶ 21. A nuisance[14] is a condition or activity which unduly interferes with the use of land or of a public place. *Schiro,* 272 Wis. at 546. A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community.[15] *See id.* (quoting Warren A. Seavey, *Nuisance: Contributory Negligence*

---

[14] We note that a nuisance can either be public or private. Here, however, we are focusing solely on public nuisance. In *Schiro,* this court quoted with approval the following language defining a private nuisance: "As commonly used, [nuisance] connotes a condition or activity which unduly interferes with the use of land or of a public place. Conduct which interferes solely with the use of a relatively small area of private land is tortious but not criminal and is called a private nuisance." 272 Wis. at 546.

[15] This definition of public nuisance is consistent with the definition of public nuisance in the Restatement (Second) of Torts § 821B (1979):

(1) A public nuisance is an unreasonable interference with a right common to the general public.

(2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

(a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

and *Other Mysteries,* 65 Harv. L. Rev. 984 (1952)). The number of people affected does not strictly define a public nuisance.[16] *State v. Quality Egg Farm, Inc.,* 104 Wis. 2d 506, 520, 311 N.W.2d 650 (1981). Rather, the court considers many factors, including, among others, the nature of the activity, the reasonableness of the use of the property, location of the activity, and the degree or character of the injury inflicted or right impinged upon. *Id.* As early as 1875, this court defined a public nuisance with regard to highways, stating: "Any obstruction in or encroachment upon a highway, which unnecessarily impedes or incommodes the lawful use of such highway by the public, is a public nuisance . . . ." *Hubbell v. Goodrich,* 37 Wis. 84, 86 (1875).[17]

---

(b) whether the conduct is proscribed by statute, ordinance or administrative regulation, or

(c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

[16] Comment g to The Restatement (Second) of Torts, § 821B (1979), echoes this idea that a public nuisance is not defined by the number of people involved, and does so in the context of a public highway.

It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large. *The obstruction of a public highway is a public nuisance, although no one is travelling upon the highway or wishes to travel on it at the time.* In many cases, the interests of the entire community may be affected by a danger to even one individual.

(Emphasis added.)

[17] The historical development of public nuisance law sheds further light on the definition of public nuisance, and its role in tort law.

¶ 22. The central issue in this case requires us to examine and define the relationship between public nuisance and negligence. The court of appeals specifically rejected the defendants' arguments that the circuit court "erred by injecting the notion of 'nuisance' into its analysis, or that it confused the issues of nuisance and negligence, or simply that it could not determine the existence of a nuisance on summary judgment." *Physicians Plus*, 2001 WI App 148, ¶ 43. Instead, the court specifically relied on the language and reasoning from *Brown*, where this court concluded that the defendant was liable for maintaining a nuisance, consisting of a dead and rotten tree located between the sidewalk and the curb. The court of appeals relied on language from *Brown* concluding that "a tree, which 'because of any change in [its] structure . . . becomes a menace to the safety of those who travel the street,' is a nuisance." *Physicians Plus*, 2001 WI App 148, ¶ 44 (citing *Brown*, 199 Wis. at 589). We conclude that the court of appeals

---

Parallel with this civil remedy protecting rights in land [private nuisance], there developed an entirely separate principle, that an infringement of the rights of the crown, or of the general public, was a crime. The earliest cases appear to have involved purprestures, which were encroachments upon the royal domain or the public highway, and might be redressed by a suit by the crown. There was enough of a superficial resemblance between the blocking of a private right of way and the blocking of a public highway to keep men contented with calling the latter a nuisance as well; and "thus was born the public nuisance, that wide term which came to include obstructed highways . . . ." . . . The remedy remained exclusively a criminal one until the sixteenth century, when it was recognized that a private individual who had suffered special damage might have a civil action in tort for the invasion of the public right.

W. Page Keeton, *Prosser and Keeton on the Law of Torts*, § 86 (5th ed. 1984) (footnotes omitted).

correctly focused its analysis on *Brown;* therefore, we first discuss *Brown* as the seminal case framing the relationship between public nuisance and negligence.[18]

¶ 23. In *Brown,* a large tree stood between the street and a public sidewalk in the City of Milwaukee. *Brown,* 199 Wis. at 577. For some time prior to the accident, the tree was dead and decaying. *Id.* On June 9, 1925, the tree suddenly fell, striking the plaintiff and causing serious injury. *Id.* The plaintiff subsequently sued the owner of the property, Milwaukee Terminal Railway Co., and the jury returned a verdict for the plaintiff. On appeal, the majority of this court initially reversed, holding that the primary responsibility for maintaining the tree belonged to the city rather than the private landowner. *Id.* at 585.

¶ 24. On reargument, the court vacated its original opinion and affirmed the verdict in favor of the plaintiff. The court discussed the relationship between nuisance and negligence, stating: "Negligence of the defendant is not ordinarily an essential element in an action for damages sustained by reason of a nuisance. The action is founded on the wrongful act in creating or maintaining it, and the negligence of the defendant, unless in exceptional cases, is not material." *Brown,* 199

---

[18] We note that there are several different remedies that can be pursued in nuisance cases. *See* 66 C.J.S. *Nuisances* § 84, 631 (1998) ("Modern remedies for a nuisance include summary abatement, suit in equity for injunction or abatement, action at law for damages, and criminal prosecution.") This case is not a nuisance abatement case. Rather, like the plaintiffs in *Brown v. Milwaukee Terminal Railway Co.,* 199 Wis. 575, 224 N.W. 748, *on reargument,* 199 Wis. 588, 227 N.W. 385 (1929), the plaintiffs here are seeking damages resulting from the maintenance of a public nuisance. As such, "[T]he injurious consequences resulting from the nuisance, rather than acts which produce the nuisance, constitute the cause of action." 66 C.J.S. *Nuisances* § 133, 712 (1998).

Wis. at 589 (quoting *Lamming v. Galusha,* 31 N.E. 1024 (N.Y. 1892)). The court held that liability for maintaining a public nuisance is based on "the degree of danger existing even with the best of care." *Brown,* 199 Wis. at 589 (quoting 20 Ruling Case Law, p. 381). The court then noted, that there is a "class of cases"—meaning cases where liability is based on maintenance of a public nuisance— where the existence of a public nuisance does not create liability unless the defendant had notice of the danger. *Id.* In this class of cases, the court held it must be shown "either that the defendant knew of the danger . . . or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff." *Id.* at 590.[19] The court specifically addressed

---

[19] *Brown* distinguishes liability for maintaining a public nuisance from liability for creating a public nuisance, by requiring actual or constructive notice in maintenance of public nuisance cases. Based on this distinction, we interpret *Brown* as essentially dividing public nuisance cases into two classes. The first class, maintenance of a public nuisance, bases liability on the defendant's failure to abate a public nuisance of which the defendant had actual or constructive notice. The defendant did not affirmatively create the nuisance, so liability is necessarily predicated on the defendant's notice of the hazardous condition. This is the kind of nuisance case we are faced with here. In contrast, the second class of cases focuses on the defendant's creation of the public nuisance and likewise does not require proof that the defendant had actual or constructive notice of the hazardous condition.

The concurring opinion misreads this distinction by interpreting *Brown* as requiring a showing of negligence as an essential element for liability for maintaining a public nuisance. Concurrence at ¶ 83. The concurring opinion focuses on the language, "by the exercise of ordinary care," but when examined

the basis for the landowner's duty to remove the nuisance there, the dead tree.

> In removing the menace of the dead tree the lotowner is not performing any duty imposed upon the public. He is simply discharging the duty which the common law imposes upon him as the owner of a tree that has become a menace to the safety of those who travel the street.

*Id.* at 591–592. The essence of the opinion, addressing the relationship between maintenance of a public nuisance and negligence, is stated in this paragraph:

> One who maintains a nuisance created by another is liable for injuries sustained because of the danger incident thereto just as clearly as if he had himself created the danger in the first place. "If the owner or the occupier of property continues a nuisance created thereon by others, he is liable, not because he owns or occupies the premises, but because he does not abate the nuisance."

*Id.* at 590 (quoting 20 Ruling Case Law, p. 392).

¶ 25. Since *Brown,* this court has decided other public nuisance cases. However, we note that although the cases referenced the relationship between public nuisance and negligence, the cases often seem to have created more confusion, rather than clarified that relationship. *See Jost v. Dairyland Power Coop.,* 45 Wis. 2d 164, 172 N.W.2d 647 (1969) (noting that the concepts of negligence and nuisance are not exclusive); *Raisanen v.*

in context, it is clear that the court's reference here relates to whether the defendant has constructive notice of the public nuisance and that proof of negligence is not required. The concurring opinion uses the phrase "exercise of ordinary care" out of context, and in doing so, misinterprets *Brown.*

107

*City of Milwaukee,* 35 Wis. 2d 504, 151 N.W.2d 129 (1967) (recognizing that nuisance can be grounded on negligent or intentional conduct but holding that if the condition does not create liability for negligence, there is no liability for negligently maintaining a public nuisance); *Plesko v. Allied Inv. Co.,* 12 Wis. 2d 168, 173, 107 N.W.2d 201 (1961) (upholding and applying *Brown* and framing the issue in terms of placing responsibility because neither the landowner nor the city acted to remove a public nuisance);[20] *Krejci v. Lojeski,* 275 Wis.

[20] We reject the Frankes' argument that *Brown* and *Plesko v. Allied Investment Co.,* 12 Wis. 2d 168, 107 N.W.2d 201 (1961), do not apply because the tree here did not obstruct the highway itself. In making this argument, the Frankes claim that subsequent cases, *Hei v. City of Durand,* 22 Wis. 2d 101, 125 N.W.2d 341 (1963), and *Peppas v. City of Milwaukee,* 29 Wis. 2d 609, 139 N.W.2d 579 (1966), limit *Brown* to situations where no maintenance of a municipality is involved and the impediment is within the control of the property owner. We reject this argument because we disagree with the Frankes' interpretation of the treatment of *Brown* and *Plesko* in these subsequent cases. In *Hei,* this court held that the property owner adjacent to the sidewalk was not liable for injuries resulting from defects in the sidewalk arising from the natural growth of roots of a tree on the owner's property. 22 Wis. 2d at 106. The court distinguished *Brown* and *Plesko* because those cases did not involve keeping a street or highway in repair, and in those cases the matter (the tree) was wholly within the control of the property owner. *Hei,* 22 Wis. 2d at 104. In *Peppas,* this court made the same distinction between a dangerous condition in a driveway and the holdings in *Brown* and *Plesko. Peppas,* 29 Wis. 2d at 618. The court further expanded on the distinction though by explaining that the original *Brown* decision was explained as unsound because it was based on "sidewalk cases" involving statutory liability for failure to perform a governmental function. *Id.* For this reason, the court in *Peppas* explained that on reargument, the *Brown* court based liability on nuisance theo-

108

20, 80 N.W.2d 794 (1957) (concluding that if a condition could not create liability for negligence, it likewise could not create liability for negligently maintaining a public nuisance); *Schiro v. Oriental Realty Co.,* 272 Wis. 537, 546, 76 N.W.2d 355 (1956) (concluding that when a nuisance is created or maintained by negligence, "the defendant should be accorded the same defenses that would be available in any other action grounded upon negligence").[21]

---

ries. *Id.* at 618–619. In *Peppas,* therefore, the court concluded "that *Brown* and *Plesko* are not controlling in the present case." *Id.* at 619.

We conclude that *Brown* and *Plesko* are properly applied in this situation because unlike the facts in *Hei* and *Peppas,* we are not concerned with the actual maintenance of the highway. Rather, we are concerned with tree branches obstructing the view of a stop sign. The so called "sidewalk cases" are not persuasive because although a highway may include sidewalks, liability here is not predicated on maintenance of the highway. Accordingly, because we do not find the "sidewalk cases" persuasive, we do not rely on *Hagerty v. Village of Bruce,* 82 Wis. 2d 208, 262 N.W.2d 102 (1978), *Jasenczak v. Schill,* 55 Wis. 2d 378, 198 N.W.2d 369 (1972), *Petroski v. Eaton Yale & Towne, Inc.,* 47 Wis. 2d 617, 178 N.W.2d 53 (1970), and *Corpron v. Safer Foods, Inc.,* 22 Wis. 2d 478, 126 N.W.2d 14 (1964).

[21] Although we are solely dealing with a public nuisance, we note that private nuisance cases similarly discuss the relationship between nuisance and negligence. In *Bell v. Gray-Robinson Construction Co.,* 265 Wis. 652, 62 N.W.2d 390 (1954), this court specifically distinguished between negligence and nuisance.

> Nuisance and negligence are different kinds of torts. A nuisance does not rest on the degree of care used, for that presents a question of negligence, but on the degree of danger existing even with the best of care. . . . To constitute a nuisance, the wrongfulness must have been in the acts themselves rather than in the failure to use the requisite degree of care in doing them, and therein lies the distinction . . . between nuisance and negligence.

109

¶ 26. Based on the relationship between public nuisance and negligence, especially as discussed in *Brown,* we conclude that public nuisance and negligence intersect in several respects. First, a public nuisance can be either intentionally or negligently maintained. *See Schiro,* 272 Wis. at 546. Second, although notice and causation are concepts usually reserved for negligence cases, liability for maintaining a public nuisance requires that the defendant had either actual or constructive notice of the public nuisance and that the failure to abate the public nuisance was a cause of the plaintiff's injuries. Third, for the purposes of comparing and apportioning responsibility, and determining contribution among culpable parties, we conclude that when all of the elements to establish liability for maintaining a public nuisance have been affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se. Finally, similar to liability for negligence, liability for maintaining a public nuisance can be limited by public policy considerations. *See Walker v. Bignell,* 100 Wis. 2d 256,

---

The one is a violation of an absolute duty; the other a failure to use the degree of care required in the particular circumstances—a violation of a relative duty.

265 Wis. at 657. Furthermore, in *Walley v. Patake,* 271 Wis. 530, 541, 74 N.W. 130 (1956), this court noted that "nuisance may exist with or without negligence," and that "[a]ny act or obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public is a nuisance." *Id.* (citing *State v. Carpenter,* 68 Wis. 165, 173, 31 N.W. 730 (1887)). The court also referenced the notice requirement, concluding that in order to be liable for maintaining a nuisance, the condition needed to exist long enough so that the defendant knew or should have known of the dangerous condition. *Id.* at 543.

265, 301 N.W.2d 447 (1981); *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976).

¶ 27. First, a public nuisance can be maintained by either negligent or intentional conduct.[22] We recognize that this first intersection of negligence and public nuisance arises under the first element for establishing liability for maintaining a public nuisance (the existence of the public nuisance), and that is where much

---

[22] We emphasize that negligence and nuisance are distinct torts, and that negligence is just one, way (as opposed to intentional) that a nuisance can be maintained.

> [Nuisance and negligence] are not synonymous, but describe completely distinct concepts, which constitute distinct torts, different in their nature and in their consequences. A claim of nuisance is more than a claim of negligence, and negligent acts do not, in themselves, constitute a nuisance; rather negligence is merely one type of conduct upon which liability for nuisance may be based, and thus, negligence is not a necessary ingredient of a nuisance.

58 Am. Jur. 2d *Nuisances* § 9, 676 (1989). "The point is that nuisance is a result and negligence is a cause and they cannot be distinguished otherwise." *Culwell v. Abbott Constr. Co., Inc.*, 506 P.2d 1191, 1196 (Kan. 1973); *see also* J.D. Lee & Barry A. Lindahl, *Mod Tort Law* § 35.08 (Rev Ed) (2001) ("Negligence and nuisance are separate and distinct torts, . . . There are well defined distinctions between negligence and nuisance."); 66 C.J.S. *Nuisances* § 18, 555–556 (1998) ("[A] nuisance may exist either with or without negligence. . . [while] the elements of nuisance and negligence frequently coexist . . . [as] a general rule negligence is not involved in nuisance actions or proceedings and is not essential to the cause of action.") (footnotes omitted). Accordingly, we respectfully disagree with the concurring opinion's position that "allegations of public nuisance based on negligent conduct remain essentially an action for negligence." Concurrence at ¶ 72.

111

confusion is created.[23] The complexity of the relationship is evident, particularly when a public nuisance is negligently maintained, because one automatically wants to trigger liability by the defendant's negligent conduct. When a public nuisance is negligently maintained it is difficult to separate the condition—the nuisance itself—from negligent conduct that allegedly allowed maintenance of the condition/nuisance. *Brown* recognizes, however, that liability for maintaining a public nuisance does not depend on the defendant's negligence or want of ordinary care. *Brown,* 199 Wis. at 589. Instead, liability is "founded on the wrongful act in [either negligently or intentionally] creating or maintaining [the nuisance]." *Id.* The liability is imposed for "the damage done by or danger inherent in the creation or maintenance of that which constitutes a nuisance." *Id.* Accordingly, although either negligent or intentional conduct can result in maintenance of a public nuisance, liability for maintaining a public nuisance is predicated on the existence of the public nuisance itself.

---

[23] "[T]hese torts [nuisance and negligence] may be, and frequently are, coexisting and practically inseparable, as where acts or omissions constituting negligence also give rise to a nuisance, and it is difficult at times to distinguish between actions of nuisance and those based on negligence." 58 Am. Jur. 2d *Nuisances* § 9, 676–677 (1989). We note, however, that, even when a nuisance is negligently maintained, the nuisance claim and the negligence claim remain distinct conceptually. "In the case of a nuisance resulting from negligence the nuisance in such case is distinguishable from the negligence in that the former is a condition that is the result of wrongdoing, surviving the negligent act, while the latter involves the wrongdoing itself." 58 Am. Jur. 2d *Nuisances* § 11, 677 (1989).

¶ 28. Since a public nuisance can arise by either negligent or intentional conduct, the first element necessary to prove liability for maintaining a public nuisance requires only the existence of the public nuisance itself. The circuit court's inquiry appropriately focuses on the dangerous condition,[24] and whether it meets the definition of public nuisance. We conclude that in this case, the court of appeals correctly interpreted *Brown,* by focusing first on the existence of the public nuisance itself and determining whether the tree branches obstructing the view of the stop sign resulted in a public nuisance.

¶ 29. The second intersection between public nuisance and negligence involves two concepts that are oftentimes reserved for negligence cases—notice and causation. *Brown* demonstrates that notice is appropriately a requirement for imposing liability for maintaining a public nuisance. This court stated in *Brown* that maintenance of public nuisance cases are a "class of cases" where actual or constructive notice is required because "the mere existence of danger does not create liability, unless the circumstances are such as to charge [the] defendant with notice of the existence of the danger." *Brown,* 199 Wis. at 589. To demonstrate the need for the notice requirement, the court stated:

---

[24] We emphasize that a public nuisance claim is not the only claim that focuses on a condition. For example, in cases filed under the safe place statute, Wis. Stat. § 101.11(1), the "focus [is] on the property condition that caused the injury rather than on the duty that the property owner or employer breached." *Barry v. Employers Mut. Cas. Co.,* 2001 WI 101, ¶ 21, 245 Wis. 2d 560, 630 N.W.2d 517.

113

In such cases where danger results, not from the planting of the tree, but through subsequent changes for which the defendant is not responsible, it is essential to liability that it be shown either that the defendant knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff.

*Id.* at 590. The key here is that a public nuisance, especially a public nuisance that was negligently maintained, can result from changes that the defendant did not direct. The decaying tree in *Brown* and the growing tree here,[25] demonstrate that a public nuisance can be maintained by no action or direction on the part of the landowner. Accordingly, liability for maintaining such a public nuisance requires proof that the defendant had actual or constructive notice of the public nuisance. We conclude, therefore, that it was appropriate to require the plaintiff to establish that there was no genuine

---

[25] We specifically reject the defendants' argument that *Brown* and *Plesko,* are inapplicable here because both cases involved a rotten tree, whereas the tree here is alive. The reasoning of *Brown* was clearly not limited to decaying, rotten trees.

> [T]rees, properly placed, do not constitute nuisances. But when such a tree, through decay *or because of any change in the structure of the tree or in its surroundings,* becomes a menace to the safety of those who travel the street, such tree may become a nuisance which will render the owner of the adjoining lot liable for injuries which may be caused to those who lawfully use the streets.

199 Wis. at 589–590 (emphasis added). Based on this court's clear language to the contrary, we reject the argument that *Brown* is limited to its facts.

issue of material fact that the defendants had actual or constructive notice of the hazardous condition.

¶ 30. In addition to notice, we conclude that causation, another concept oftentimes reserved for negligence cases, is appropriately required to prove a public nuisance claim. Accordingly, we conclude, as did the court of appeals, that liability for maintaining a public nuisance requires proof that the failure to abate the public nuisance was a cause of the plaintiff's injuries.

¶ 31. Another intersection of negligence and public nuisance involves the responsibility comparison and apportionment among culpable parties. We find it useful to analogize conceptually the allocation of responsibility in a public nuisance case to negligence per se[26] or negligence as a matter of law. For the purposes of comparing and apportioning responsibility for the accident and for determining contribution among the parties responsible for maintaining the nuisance, we conclude that when all of the elements necessary to establish liability for maintaining a public nuisance have been affirmatively proven—existence of the public nuisance, notice, and causation—a defendant's failure to abate a public nuisance is analogous to negligence per se.[27] In order to provide for the allocation of responsibility and to determine contribution, a

---

[26] "As a general rule, the violation of a public duty, enjoined by law for the protection of person or property, constitutes [negligence per se]." *Black's Law Dictionary* 1187 (4th ed. 1957).

[27] This analogy is consistent with the comments to the Restatement (Second) of Torts § 821B (1979), where the Restatement analogizes public nuisance to negligence as a matter of law. In a discussion of public nuisance, Comment e to § 821B states:

defendant's failure to abate a public nuisance could be treated as analogous to negligence per se—the failure to follow a legislatively prescribed minimum standard. By concluding that a defendant's failure to abate a public nuisance is analogous to negligence per se, it allows the jury to allocate responsibility among culpable parties, which is consistent with contributory negligence principles established in Wis. Stat. § 895.045[28] and as applied in *Schiro*. *See Schiro*, 272 Wis. at 547 ("[C]ontributory negligence is a defense in an action for damages occasioned by a nuisance grounded upon neg-

There is a clear analogy to the doctrine of negligence as a matter of law. . . . In the case of negligence as a matter of law, the standard defined by a legislative enactment is normally a minimum standard. . . . The same general principle applies to public nuisance.

[28] 895.045 Contributory negligence. (1) COMPARATIVE NEGLIGENCE. Contributory negligence does not bar recovery in an action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if that negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributed to the person recovering. The negligence of the plaintiff shall be measured separately against the negligence of each person found to be causally negligent. The liability of each person found to be causally negligent whose percentage of causal negligence is less than 51% is limited to the percentage of the total causal negligence attributed to that person. A person found to be causally negligent whose percentage of causal negligence is 51% or more shall be jointly and severally liable for the damages allowed.

(2) CONCERTED ACTION. Notwithstanding sub. (1), if 2 or more parties act in accordance with a common scheme or plan, those parties are jointly and severally liable for all damages resulting from that action, except as provided in s. 895.85(5).

ligence."); *see also McFarlane v. City of Niagara Falls,*
160 N.E. 391, 392 (N.Y. 1928) (Judge Cardozo holding
that where negligence is the basis of the nuisance
contributory negligence principles apply). We conclude,
therefore, that the negligence per se analogy appropri-
ately frames the fact-finder's role to apportion respon-
sibility and to determine contribution among culpable
parties in a public nuisance case.

¶ 32. Finally, we conclude that negligence and
public nuisance intersect with regard to public policy
considerations. Similar to liability for negligence, we
conclude that liability for maintaining a public nui-
sance can be limited by public policy considerations. By
examining public policy considerations we direct our
attention to the question: Should a party who has
maintained a public nuisance which has caused harm to
another be shielded from liability on public policy
grounds? "The application of the public policy consider-
ations is solely a function of the court." *Coffey,* 74 Wis.
2d at 541. We find sufficient reason to apply public
policy considerations here, where we are analyzing
liability for the alleged negligent maintenance of a
public nuisance. The existence of a public nuisance,
combined with notice, creates a duty to abate the
nuisance because of foreseeable danger. As with negli-
gence, however, there are circumstances where impos-
ing liability would be unreasonable. *See Walker,* 100
Wis. 2d at 265; *see also Miller v. Wal-Mart Stores, Inc.,*
219 Wis. 2d 250, 264–265, 580 N.W.2d 233 (1998)
(enumerating six policy considerations). We recognize
that even though "the chain of causation is complete
and direct, recovery may sometimes be denied on
grounds of public policy. . . ." *Coffey,* 74 Wis. 2d at 541.

117

Accordingly, we conclude that the court of appeals appropriately examined public policy considerations in this case.

## IV. EXISTENCE OF A PUBLIC NUISANCE

¶ 33. We now turn to the record to determine whether the tree branches obstructing the view of the stop sign resulted in a public nuisance as a matter of law.[29] Based on the definition of public nuisance from *State v. Quality Egg Farm, Inc.,* 104 Wis. 2d 506, 517, 311 N.W.2d 650 (1981), and *State v. Michels Pipeline Construction, Inc.,* 63 Wis. 2d 278, 286–287, 217 N.W.2d 339 (1974), we conclude that the tree branches obstructing the view of the stop sign resulted in a condition that substantially or unduly interfered with the use of a public place or with the activities of an entire community. *See Schiro,* 272 Wis. at 546. Our inquiry focuses on two questions: (1) whether there are any disputed issues of material fact to preclude a summary judgment determination that the condition of the tree branches in relation to the stop sign amounted to a public nuisance, and (2) if not, whether there are any disputed issues of material fact regarding whether the defendants had actual or constructive notice of the hazardous condition. We agree with the circuit court

---

[29] We note that this case comes before us on review of the circuit court's summary judgment decision. Accordingly, we determine whether the elements to establish liability for maintaining a public nuisance are established as a matter of law based on the undisputed facts. We are in no way precluding an inquiry in future cases where questions regarding the existence of a public nuisance, notice, and causation would be issues proper for the fact-finder.

118

and the court of appeals, that there are no genuine issues of material fact on these matters.

■

¶ 34. Based on our review of the photographs and videotape in the record, we conclude that "the stop sign was largely, if not completely, obscured from the view of drivers approaching the intersection in the direction Diane Smith was traveling." *Physicians Plus,* 2001 WI App 148, ¶ 47. The obstruction of the view of the stop sign is evident in the record. The photographs and the videotape are convincing because they show the tree and the stop sign in the condition they were in on the afternoon of the accident, from the same vantage point as that of Diane Smith; and the second photo also shows the tree and the stop sign at a later date, after the tree was trimmed.

¶ 35. We further conclude that none of the defendants submitted evidence to dispute our conclusion reached upon review of the photographs and videotape. Neither Dodge County nor the Town of Leroy point to evidence contrary to the photos and videotape. The Frankes, however, oppose summary judgment by arguing that the photos are not reliable because wind and shade may have altered the visibility, and that their deposition testimony disputes whether the tree branches actually obscured the stop sign. We reject both arguments. As the court of appeals concluded, the Frankes' first argument is mere conjecture and does not satisfy the nonmoving party's obligation to oppose summary judgment by advancing specific facts showing the presence of a genuine material dispute. *See Physicians Plus*, 2001 WI App 148, ¶ 48; *see also Baxter*, 165 Wis. 2d at 312 (nonmovant must demonstrate more than a mere existence of an alleged factual dispute).

¶ 36. With regard to the second argument, the Frankes contend that the circuit court improperly acted as a fact-finder in concluding that their deposition testimony did not raise any genuine issue of material fact. The Frankes' argue that their testimony indicated that the sign was only partially blocked. The Frankes' further rely on testimony of their neighbor, a Town of Leroy supervisor, stating that he never had trouble seeing the stop sign, although he knew it was there. We conclude, as the circuit court and court of appeals did, that the Frankes' evidence does not create a genuine material factual dispute that the stop sign was significantly obstructed from the view of a driver coming from the west on Ledge Road. Testimony from the Frankes and their neighbor, all persons familiar with the intersection, is not credible evidence sufficient to place in

dispute the fact that the tree branches obscuring the view of the stop sign resulted in a public nuisance. Furthermore, we rely on the photographic evidence because where physical evidence is in conflict with oral testimony, the physical evidence must control. *Chart v. General Motors Corp.*, 80 Wis. 2d 91, 111, 258 N.W.2d 680 (1977); *State v. Lucynski,* 48 Wis. 2d 232, 238, 179 N.W.2d 889 (1970); *see also Whitefish Bay v. Hardtke,* 40 Wis. 2d 150, 153, 161 N.W.2d 259 (1968) ("Physical evidence may not only contradict oral testimony but, if irrefutable and unquestionable, it may render testimony incredible."). Accordingly, based on the undisputed photographic evidence, we conclude that the tree branches obstructing the view of the stop sign constituted a public nuisance as a matter of law.

## V. ACTUAL OR CONSTRUCTIVE NOTICE

¶ 37. Since we conclude that there is no genuine material factual dispute regarding whether the condition constituted a public nuisance, we now look at whether there are any genuine disputed issues of material fact regarding whether the defendants had actual or constructive notice of the condition. Under *Brown,* a defendant is only liable for the maintenance of a public nuisance if the defendant "knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, by the exercise of ordinary care, the defendant ought to have discovered the danger and to have removed it before injuries were sustained by the plaintiff." 199 Wis. at 590. The Frankes and Dodge County both argue that the circuit court and court of appeals erred in concluding they had notice of the condition, because the question of notice is one for the jury. In contrast, Smith contends that the hazard was not something that appeared suddenly.

Rather, it was a slow occurring hazard and therefore, a jury is not required to determine whether there was reasonable time to discover the condition.

¶ 38. We independently review the record to determine whether, as a matter of law, the defendants had actual or constructive notice. Smith points to the arborist's affidavit, stating the "opinion that the obstruction of the stop sign (during time of foliage) existed for at least the spring and summer of 1996 and the foliage season of 1995." There is no direct evidence in the record to the contrary. While the Frankes' try to rely again on their testimony and their neighbor's testimony that the sign was only partially obscured, that testimony does not relate to when the condition occurred, let alone whether the obstruction of the stop sign was more recent than what the arborist opined. Based on the arborist's affidavit, we therefore conclude that the tree branches substantially obstructed the view of the stop sign for at least the spring of 1996 through the date of the accident, July 21, 1996.

¶ 39. We now turn to whether this period of time, two to three months, is sufficient to impute constructive notice of the condition as a matter of law.

> [C]onstructive notice is chargeable only where the hazard has existed for a sufficient length of time to allow the vigilant owner or employer the opportunity to discover and remedy the situation. The length of time viewed as sufficient varies according to the nature of the business, the nature of the defect, and the public policy involved.

*May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36–37, 264 N.W.2d 574 (1978) (footnote omitted). We agree with the circuit

court and the court of appeals that the hazardous condition existed for a sufficient time to the allow the Frankes, Dodge County, and the Town of Leroy to discover and remedy the hazard. With regard to the Frankes, this tree was in their yard and they acknowledged seeing the intersection on a daily basis. While they maintain that the stop sign was only "partially" obstructed, their testimony is sufficient to conclude that they had at least constructive knowledge of the condition, and perhaps even actual knowledge. Therefore, like the court of appeals, we find "no difficulty concluding that the Frankes knew or ought to have known that the branches of their tree posed a hazard to traffic at the intersection by obscuring the stop sign." *Physicians Plus,* 2001 WI App 148, ¶ 57.

¶ 40. We also conclude that Dodge County and the Town of Leroy had constructive notice. While both municipalities conducted inspections of roads and signs, the inspections were conducted in April and November, the non-foliage season. For the rest of the year, the municipalities apparently relied on citizens to report hazardous roads and conditions. Two to three months is a sufficient length of time for representatives of the municipalities to drive by, or be notified of the hazard. *See Firkus v. Rombalski,* 25 Wis. 2d 352, 359, 130 N.W.2d 835 (1964) (nineteen days after actual notice is sufficient time to constitute unreasonable delay in replacing traffic sign). Dodge County and the Town of Leroy therefore had sufficient time to discover and remedy the hazard. Accordingly, we conclude that the circuit court and the court of appeals correctly ' concluded that there was no genuine material factual

dispute regarding the existence of a public nuisance or the defendants' actual or constructive notice of the hazardous condition.

## VI. CAUSATION

¶ 41. We now turn to the issue of causation, and whether causation may be decided on summary judgment. We keep in mind that disputed reasonable inferences preclude a determination on summary judgment. *See Wills v. Regan,* 58 Wis. 2d 328, 339, 206 N.W.2d 398 (1973). The circuit court concluded that the issue of causation was appropriate for summary judgment. Based on the record, the court concluded that the defendants, owing a duty to remove the obstruction and failing to do so, contributed to cause the accident. In fact, the circuit court stated, "To conclude that that was not a cause of this accident *is* utterly unsupported in fact, law or logic." The court of appeals, however, disagreed and reversed the decision on causation, concluding "that disputed reasonable inferences from the facts of record preclude a determination on summary judgment that the obscuration of the stop sign was a cause of the accident in which Smith was injured." *Physicians Plus,* 2001 WI App 148, ¶ 58.

¶ 42. We agree with the court of appeals' decision on the issue of causation. There is evidence in the record that Diane Smith had consumed alcohol immediately prior to the accident. In fact, Diane Smith told a police investigator that she had consumed "4–5 beers" during the two hours prior to the accident and admitted to being possibly under the influence of alcohol. Based on the record, and the disputed reasonable inferences,

we agree with the court of appeals "that reasonable fact finders could differ on the issue of whether Diane Smith's actions were the sole cause of the accident, that is, whether the tree-obscured stop sign was a substantial factor contributing to the accident." *Id.* at ¶ 62. The circuit court's grant of summary judgment on the issue of causation was therefore inappropriate on this record.[30] We, therefore, affirm the court of appeals' decision that the tree branches obstructing the view of the stop sign created a public nuisance, that all three defendants had actual or constructive notice of the hazard, but that disputed reasonable inferences make the issue of whether the failure to abate the public nuisance was a cause of plaintiff's injuries inappropriate for summary judgment.

## VII. FAILURE TO ABATE A PUBLIC NUISANCE AS ANALOGOUS TO NEGLIGENCE PER SE

¶ 43. As noted earlier, we conclude that for the purposes of comparing and apportioning responsibility, and determining contribution among culpable parties, when all of the elements necessary to establish liability for maintaining a public nuisance have been affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se. We emphasize that this case comes before the court on review of the circuit court's summary judgment decision. We previously concluded that the circuit court correctly

---

[30] We note, however, as did the court of appeals, that this conclusion does not suggest that a jury verdict assigning all or nearly all causation to the hazard would not be sustainable. *See Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶ 63, 246 Wis. 2d 933, 632 N.W.2d 59. We simply find the issue inappropriate for summary judgment on this record.

decided that the hazardous condition constituted a public nuisance as a matter of law, and that each defendant had actual or constructive notice of the public nuisance. The remaining element, causation, however, is not appropriately decided on summary judgment here because disputed reasonable inferences remain. The issue of causation remains a question for the jury, so all elements necessary to prove liability for maintaining a public nuisance are not affirmatively decided in this case. We conclude, however, that if causation is established at trial, for the purposes of comparing and apportioning responsibility and determining contribution among the culpable parties, each defendant's failure to abate the public nuisance would be analogous to negligence per se.

## VIII. PUBLIC POLICY

¶ 44. We now turn to the last intersection between public nuisance and negligence and determine whether each defendant is excluded from liability for public policy reasons. *See Physician Plus,* 2001 WI App 148, ¶ 12; *see also Walker,* 100 Wis. 2d at 265 ("Whether liability should be imposed in a given situation is a question of policy, whether the liability is regulated by the notion of duty . . . or whether . . . liability is cut off after the elements . . . have been established."). The court of appeals concluded that each defendant here was responsible for maintaining a public nuisance and would not be excused from liability based on public policy grounds. As we have previously recognized, "The application of the public policy considerations is solely a function of the court." *Coffey,* 74 Wis. 2d at 541. Accordingly, we review each defendant's relationship to the public nuisance and then address the public policy

127

arguments of each defendant, since each claims it is excluded from liability for failure to trim the offending branches in this case.

¶ 45. A duty of care exists under Wisconsin law "whenever it was foreseeable to the defendant that his or her act or omission to act might cause harm to some other person." *Gritzner v. Michael R.*, 2000 WI 68, ¶ 20, 235 Wis. 2d 781, 611 N.W.2d 906. Liability for breach of a duty—here, the duty to abate a public nuisance—may be limited or precluded, however, based on public policy. *See Gritzner*, 2000 WI 68, ¶ 24. Whether each of the defendants in this case is excused from liability based on public policy considerations is appropriately before this court based on the conclusions we have previously reached in this case.

¶ 46. Before discussing the public policy considerations, we note that none of the defendants argue that no one is liable for the hazardous condition. Instead, the Frankes, Dodge County, and the Town of Leroy point fingers at each other, claiming that one or both of the other defendants are liable for maintaining the public nuisance.[31] We conclude, however, that all three defendants had a duty to abate the public nuisance and are therefore liable for maintaining a public nuisance, if causation is established at trial.

A. Frankes

¶ 47. The Frankes frame the issue in this case in terms of maintaining the stop sign and argue that they are not liable for failing to abate the public nuisance because (1) the municipalities, not the homeowners,

---

[31] We note that the Town of Leroy explicitly takes no position regarding the duty or liability of the Frankes.

have a non-delegable duty to maintain the stop sign; and (2) public policy considerations recognized in *Walker* and *Miller* preclude their liability.[32] Before addressing these arguments, however, we note a significant fact: the offending tree is located on Frankes' land. As it was their tree, the Frankes' had control over it, which was demonstrated by the fact that they trimmed the tree branches on the side of the tree facing

---

[32] The Frankes also make two arguments relating to common law obligations. First, they argue that they do not have a duty under common law principles. They specifically refer to Restatement (Second) of Torts § 363 (1965), concluding "that a landowner incurs no liability for physical harm caused by the natural condition of his land to those outside his property." *Wells v. Chicago & North Western Transp. Co.*, 91 Wis. 2d 565, 569, 283 N.W.2d 471 (Ct. App. 1979). We reject this argument, however, because we conclude that Restatement § 363 does not resolve this case since this court, in affirming the court of appeals' decision, did not rely on or adopt that section of the Restatement. *See Wells v. Chicago & North Western Transp. Co.*, 98 Wis. 2d 328, 296 N.W.2d 559 (1980). Furthermore, we conclude that § 363 is not controlling because that section is undermined in both the Comment to § 363 ("[Reasonable care] will at least require [the possessor of land] to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree."), and Restatement (Second) of Torts § 840 (indicating the exception to the general rule in § 363).

The Frankes also argue, however, that the imposition of liability in this case is a change in common law obligations and therefore should be applied prospectively. We disagree that this is a change in common law obligations. This court decided *Brown* in 1929, and has discussed *Brown* in subsequent decisions. While this case presents a new set of facts for application of the reasoning in *Brown,* this is not a change in common law obligations. Accordingly, we decline the Frankes' invitation to apply the legal conclusions of this case prospectively.

their residence. The Frankes' control over the tree is also noted by the fact that Donald Franke joined in trimming the tree branches the day after the accident.

¶ 48. The Frankes first argue that they are relieved of liability because the municipalities, not the landowner, have a non-delegable duty to maintain the stop sign. In making this argument, the Frankes erroneously restrict the scope of this case to the stop sign, rather than the relationship between the stop sign and the offending tree branches. We reject the Frankes' argument because we are not concluding that the Frankes' are liable for failing to maintain a stop sign. We reiterate that they are liable for failing to abate a public nuisance, if found to be causal of the injuries. Their liability is based on their failure to trim the branches of their tree, which they knew, or should have known, to be obstructing the view of a stop sign and thus, resulting in a hazardous condition. We agree with the court of appeals' statement:

> We emphasize again that the liability of the Frankes on the present facts is in no way premised on their failure to maintain the 'streets, highways, and related signage' adjacent to their home, but on their failure to eliminate a safety hazard created by a tree growing in their yard.

*Physicians Plus,* 2001 WI App 148, ¶ 19. We will not discuss the specific duties of municipalities here because we specifically address those duties in Section VIII. B. and VIII. C., as they relate to Dodge County and the Town of Leroy. We note, however, that a municipality's non-delegable duty is not necessarily an exclusive duty. *See First Nat'l Bank & Trust Co. of Racine v. S.C. Johnson & Sons, Inc.,* 264 Wis. 404, 409, 59 N.W.2d 445 (1953) (property owner and city both

liable for injuries caused by broken curbstone); *Holl v. City of Merrill,* 251 Wis. 203, 209, 28 N.W.2d 363 (1947) (city and adjoining landowner both liable for creating or maintaining a nuisance regarding sidewalk repair). The Frankes' argument that a municipality's non-delegable duty to maintain the stop sign relieves them of liability for failing to trim the tree branches, therefore fails.

¶ 49. The Frankes' also argue that they should be relieved of liability based on general public policy grounds set forth in our case law. Relying on the public policy exclusion from liability stated in *Walker,* 100 Wis. 2d at 265, and this court's acknowledgement of six public policy considerations; *see Miller,* 219 Wis. 2d at 264–265, the Frankes contend that imposing liability here (1) would be an imposition of liability and expense out of proportion to the liability of the motoring public and municipalities; (2) would place an unreasonable burden (patrol and decide what to cut or what crops not to plant) on landowners; and (3) will cause liability to enter a field where there is no sensible or just stopping point.

¶ 50. We first reject the Frankes' argument that *Walker* applies because the public policy exclusion in that case related to municipalities and eliminating visual obstructions at "areas adjacent to every highway intersection." 100 Wis. 2d at 266. We conclude that *Walker* does not relieve the Frankes of liability because that case related to municipal liability rather than that of private landowners. *See Beacon Bowl v. Wis. Elec. Power Co.,* 176 Wis. 2d 740, 764, 501 N.W.2d 788 (1993). Furthermore, as we discuss in Section VIII B., the *Walker* public policy holding does not apply to an obstructed view of a stop sign.

131

¶ 51. We also reject the Frankes' other public policy arguments by noting the limited scope of this decision. We reiterate that the Frankes' liability is not based on their failure to maintain the highway, a stop sign, or a general area of visibility. Rather, their responsibility is based solely on their failure to trim the branches of their tree, which they knew, or should have known to be obstructing the view of a stop sign—their failure to abate the public nuisance. Because responsibility is strictly based on the facts of this case, we disagree with the Frankes' conclusions that there is no sensible or just stopping point.

¶ 52. We also disagree with the Frankes' argument that liability places an unreasonable burden on the landowner. The burden is to trim one's own tree when one knows, or should know, that it is creating a hazardous condition. We do not find this unreasonable. Furthermore, we reject the Frankes' arguments that their liability is out of proportion to the liability of the motoring public and municipalities. As we discuss below, the municipalities in this case are also liable for maintaining a public nuisance. The proportion of each defendant's liability, however, is an issue of causation, and of comparison, which we previously concluded is not appropriate for summary judgment. We, therefore, reject their final public policy argument and affirm the court of appeals' holding that the Frankes had a duty to abate the public nuisance, and, if causal, are liable for failing to do so.

B. Dodge County

¶ 53. We now turn to whether Dodge County's liability is limited by public policy considerations. Before turning to Dodge County's legal arguments, we note the relationship between Dodge County, the tree,

132

and the stop sign. Highway Z is an arterial highway and Dodge County installed the stop sign requiring drivers to stop when proceeding on Ledge Road. Furthermore, Dodge County personnel annually drove through the county to check the visibility of signs. The inspection was usually during November, at night, and the primary purpose was to determine reflectivity.

¶ 54. Dodge County argues it is not liable for failing to trim the branches of the Frankes' tree because (1) under the public policy in *Walker*, municipalities may not be held liable for failure to cut vegetation; (2) under *Brown*, Dodge County cannot be liable because it does not maintain either the right of way or the Frankes' property; and (3) Dodge County is prohibited from trimming the Frankes' tree branches under Wis. Stat. § 86.03(3) and (4). We address each argument in turn.

¶ 55. First, based on the public policy discussion in *Walker*, Dodge County contends that a municipality cannot be held liable for failure to trim vegetation in order to assure motorist visibility. Dodge County contends that *Walker* controls here, and that as a matter of law it cannot be held liable. We disagree. In *Walker*, the plaintiffs were in a traffic accident and sued both the town and county in charge of maintaining the roads. The plaintiffs alleged that the municipalities were negligent in failing to trim weeds in the areas adjacent to the roads, and because they were so overgrown, the weeds obstructed the view of the intersection. *Walker*, 100 Wis. 2d at 258. This court declined to assert that municipalities have "an affirmative duty to cut roadside vegetation in order to assure motorist visibility," and declared as a matter of public policy that "municipalities should not be exposed to common law liability" in these circumstances. *Id.* at 266. The court reasoned

that such liability would place an unreasonable and unmanageable burden upon municipalities, and that "the height and density of vegetation would become a factor in nearly every intersection accident case." *Id.*

¶ 56. The court of appeals recently applied *Walker* in another roadside vegetation case, *Estate of Robert Wagoner v. City of Milwaukee,* 2001 WI App 292, 249 Wis. 2d 306, 638 N.W.2d 382. In *Wagoner,* the court of appeals refused to distinguish between a municipality that does not cut roadside vegetation and a municipality that cuts roadside vegetation, but does so negligently. *Id.* at ¶ 8. Based on the same policy concerns enunciated in *Walker,* the court of appeals refused to create municipal liability for failure to cut roadside vegetation. *Id.* at ¶ 10.

¶ 57. Dodge County argues that the policy concerns in *Walker* (and subsequently *Wagoner*) apply here, concluding that municipalities are not liable for failing to cut vegetation, even if the vegetation is obstructing the view of a stop sign. In contrast, Smith contends that *Walker* does not apply here because a stop sign is involved, and Dodge County has an affirmative duty to maintain the stop sign under Wis. Stat. § 349.065. We agree with Smith, the circuit court, and the court of appeals that *Walker* "should not be extended to circumstances where a traffic control sign, and not just general visibility at the intersection, is obscured." *Physicians Plus,* 2001 WI App 148, ¶ 31.

¶ 58. We decline to conclude that Dodge County's liability is limited by public policy because under the statutes and case law, Dodge County had an affirmative duty to maintain the stop sign. Wisconsin Stat. § 349.065 states, "Local authorities shall place and

*maintain* traffic control devices upon highways under their jurisdiction to regulate, warn, guide or inform traffic." (Emphasis added.) Furthermore, the statute requires that local authorities use and maintain such traffic control devices according to the Department of Transportation's manual. *Id.; see also* Wis. Stat. § 84.02(4). The manual requires "All traffic signs should be kept in proper position, clean and legible at all times." The manual also requires the municipality to schedule "inspection, cleaning and replacement" and states that "Special attention and necessary action should be taken to see that weeds, trees, shrubbery and construction materials do not obscure the face of any sign." Based on these express recognitions of a county's duty to maintain traffic control signs, we refuse to conclude that Dodge County is excused from such a duty regarding the stop sign it placed in this case.

¶ 59. In addition to the statutory requirements, this court's prior decisions support our conclusion. In *Naker v. Town of Trenton,* 62 Wis. 2d 654, 215 N.W.2d 38 *on rehearing,* 62 Wis. 2d 660, 660a, 217 N.W.2d 665 (1974), this court explicitly stated, "A sign once erected by legislative action must be properly maintained . . . ." As the municipality with the duty to erect the stop sign at the intersection of Ledge Road and Highway Z, Dodge County appropriately took action to erect the stop sign, and subsequently also had a duty, based on the statutes and case law, to maintain that sign. According to the Department of Transportation Manual, Dodge County's maintenance duty encompasses assuring visibility and taking "necessary action" to assure the face of the stop sign is not obscured by trees. This duty could not be stated any clearer.

¶ 60. In affirming this duty, we also recognize that the policy concerns of *Walker* shift significantly when

the focus is on a traffic control sign, rather than general visibility at an intersection. The uncertainty of whether trimming vegetation increases general visibility is not present when the question focuses on a specific object such as the stop sign. Accordingly, based on the explicit directives discussed above, including the statutes, the manual, and the case law, we decline to extend *Walker* to the present facts.[33]

¶ 61. Dodge County's second argument is that it cannot be liable because, under *Brown,* liability is limited to the Frankes and the Town of Leroy. Dodge County contends that it escapes liability because it does not maintain either the property on which the tree is located, or the right-of-way where the stop sign is placed. Again, we disagree with Dodge County's interpretation of this court's precedent. In *Brown,* this court concluded that city ordinances gave the city authority to remove the dead tree on the landowner's property, and in no way limited the power of the landowner to remove the dead tree on his or her property. 199 Wis. at 591. Applied here, the principles enunciated in *Brown* require that we conclude that Dodge County cannot escape liability for failing to trim, or to request others to trim, the tree branches. As we discussed above, the statutes and the Department of Transportation Manual give Dodge County the authority to—and in fact

---

[33] We note that our decision here does not address whether Wis. Stat. § 349.065 and the related statutes and regulations, themselves, "provide a basis for the civil liability of municipalities to injured motorists on the present facts." *Physicians Plus,* 2001 WI App 148, ¶ 35 n.11. Our decision here is limited to the facts before us, and relies on those statutes and regulations only for the purpose of determining a municipality's duty to maintain the stop sign.

require—that Dodge County maintain the visibility of the stop sign. This duty specifically encompasses taking "necessary action," for example, trimming trees, to assure that trees do not obscure the face of the stop sign. Accordingly, we reject Dodge County's interpretation of *Brown* as limited to its facts.

¶ 62. Finally, Dodge County argues that under Wis. Stat. § 86.03(3) and (4), it is prohibited from trimming the tree branches. Dodge County argues that it was prohibited from trimming the tree because the tree was not within its right-of-way, and the most it could do was request others to trim the offending branches. Specifically, Dodge County relies on language in § 86.03(3) and (4) stating, "trees . . . shall be cut or removed only by the owner or occupant of the abutting land or by the public authority having control of the highway." We agree with the court of appeals' discussion of this argument, and similarly reject that argument for several reasons. First, as discussed above, § 349.065 and related statutes and regulations require Dodge County, in the course of maintaining the stop sign, to take "necessary action" to assure the visibility of the stop sign. Furthermore, as Smith points out, § 83.015(2)(a) allows Dodge County to "enter private lands with their employees to remove weeds and brush . . . ." Accordingly, Dodge County was not powerless in being able to trim the offending branches, or request the assistance of the Frankes or the Town of Leroy in trimming the branches that it knew, or should have known, were obstructing the visibility of the stop sign. We, therefore, conclude that Dodge County does not escape liability based on its failure to trim the offending branches—to abate the public nuisance.

## C. Town of Leroy

¶ 63. Finally, we determine whether the Town of Leroy should be held liable for its failure to trim the branches obstructing the view of the stop sign. Again, we first note the relationship between the Town of Leroy, the tree, and the stop sign. The tree is partially within the Town of Leroy's highway right-of-way for Ledge Road. In April of each year, Town of Leroy personnel inspect the roads to assure stop signs are in good condition, but apparently do not inspect for obstruction of stop signs. We again note that the morning after the accident a Town of Leroy representative assisted Donald Franke in cutting the offending branches. We also note that at the time of the accident Ermanelda Franke was the Town of Leroy Assessor and her neighbor, Linus Schraufnagel, was Town Chairman.[34]

¶ 64. The Town of Leroy argues that it is not liable for failing to abate the public nuisance because (1) under the Wisconsin Statutes the sole duty to maintain the stop sign lies with Dodge County, and (2) the Town of Leroy does not have a common law duty to maintain the stop sign.

¶ 65. With regard to the first issue, we acknowledge that Dodge County has a duty to maintain the stop

---

[34] We note that public policy considerations would preclude the individual liability of Linus Schraufnagel, the Frankes' neighbor, for his failure to abate the public nuisance. Although Schraufnagel likely had actual or constructive notice of the hazardous condition, holding him liable would cause liability to enter a field where there is no sensible or just stopping point. *See Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 265, 580 N.W.2d 233 (1998).

sign. However, we decline to conclude that this is an exclusive duty that relieves the Town of Leroy of its responsibilities. Under Wis. Stat. § 81.01, the Town of Leroy "shall have the care and supervision of all highways in the town," and shall "[e]nter any private lands with their employees and agents for the purposes of removing weeds and brush . . . ." § 81.01(10). We further recognize that § 81.15 grants a private right of action against a town, city or village to recover damages due to the "insufficiency or want of repairs of any highway . . . ." While the Town of Leroy's liability is not directly based on a claim under § 81.15, this statute, in combination with the other statutes previously discussed, leads us to conclude that there is no public policy rationale for relieving the Town of Leroy of liability for a hazardous condition present in its right-of-way.

¶ 66. Second, the Town of Leroy argues that it is not liable here because it did not have a common law duty to maintain the stop sign. We first note that this argument erroneously restricts the scope of this case to the stop sign and ignores the Town of Leroy's duty to trim the tree branches located in its right-of-way obstructing visibility of a stop sign. While we acknowledge that the Town of Leroy does not have a common law duty to maintain stop signs placed and maintained by Dodge County, this argument ignores the statutory provisions discussed above, charging it with "the care and supervision of all highways in the town." Although Wis. Stat. § 81.01 includes the phrase, "except as otherwise provided," we decline to construe that phrase to mean that if another governmental entity also has a duty to maintain a stop sign, the Town of Leroy is relieved of its duty to maintain its highways. Rather, we

conclude that both governmental units had a duty, neither of which was exclusive of the other. Based on the statutory provisions requiring the Town of Leroy to maintain its highways, including its rights-of-way, we conclude that it had a duty here to trim the tree branches that it knew, or should have known, were present in its right-of-way, and which were obstructing the view of a stop sign. Accordingly, we affirm the conclusion of the court of appeals regarding the Town of Leroy's duty to abate the public nuisance.

¶ 67. In summary, we affirm the court of appeals' decision that, if the public nuisance is found to be a cause of the accident, none of the defendants can escape liability for maintaining a public nuisance due to public policy considerations. Based on the statutes, regulations, case law, and public policy concerns, we conclude that each of the defendants, the Frankes, Dodge County, and Town of Leroy, had a relationship with respect to either the stop sign or the tree, making each individually responsible for trimming the offending branches—abating the public nuisance.

## IX. CONCLUSION

¶ 68. We have concluded that the Frankes, the Town of Leroy, and Dodge County are all liable, if causation is established, as a matter of law for maintaining a public nuisance, consisting of tree branches obstructing the view of a stop sign at a highway intersection. We have defined a public nuisance as a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community. Based on the framework in *Brown,* we have attempted to clarify the relationship between negligence and public nuisance. Specifically, we have noted that a public nuisance can

result from either negligent or intentional conduct and that liability for maintaining a public nuisance requires existence of the public nuisance, either actual or constructive notice of the public nuisance, and a determination that the failure to abate the public nuisance is a cause of the plaintiff's injuries. We have concluded that for the purposes of comparing and apportioning responsibility and for determining contribution among culpable parties, when all of the elements for liability for maintaining a public nuisance have been affirmatively proven, a defendant's failure to abate a public nuisance is analogous to negligence per se. We have further concluded that similar to liability for negligence, liability for maintaining a public nuisance can be limited by public policy considerations.

¶ 69. Applying the *Brown* framework here, we have concluded that the hazardous condition—the tree branches obstructing the view of a stop sign— constituted a public nuisance as a matter of law; there is no genuine issue of material fact in that regard. Furthermore, we have concluded that there is no genuine issue of material fact precluding summary judgment on the issue of notice. The hazard existed for at least two to three months before the accident, which is sufficient time to impute either actual or constructive notice to the Frankes, the Town of Leroy and Dodge County. Regarding the issue of whether the failure to abate the public nuisance was a cause of plaintiff's injuries, however, we have concluded that disputed reasonable inferences preclude a determination now, so that it is not appropriate to grant summary judgment on that issue. The record contains evidence that Diane Smith had consumed four to five beers before the accident. The jury is therefore the appropriate fact finder to determine a cause or causes of the accident

and apportion liability accordingly. If causation is established at trial, however, we conclude that for purposes of comparing and apportioning responsibility for the accident and for determining contribution among culpable parties, each defendant's failure to abate the public nuisance is analogous to negligence per se.

¶ 70. Finally, we have reviewed the public policy arguments of each defendant, and have concluded that the Frankes, Dodge County, and the Town of Leroy all had responsibility to abate the public nuisance. Public policy considerations do not preclude liability here for any of the defendants.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 71. JON P. WILCOX, J., did not participate.

¶ 72. ANN WALSH BRADLEY, J. *(concurring).* The majority attempts to clarify the relationship between public nuisance and negligence. Its attempt, although thorough, ultimately proves unsuccessful. It fails because the majority refuses to acknowledge what is interspersed throughout its opinion: that allegations of public nuisance based on negligent conduct remain essentially an action for negligence.

¶ 73. I do not understand why the majority goes to such trouble to insist that negligence is unnecessary to this case. Instead of recognizing that the case is grounded in negligence, the majority engages in judicial gymnastics trying to fit public nuisance into something it labels "analogous to negligence per se." Majority op. at ¶ 20. When all is said and done, the majority opinion ends up looking like a negligence analysis anyway.

¶ 74. In describing the intersection of public nuisance and negligence, the majority opinion cites elements and rules that lead me to conclude that this

142

public nuisance cause of action is essentially an action for negligence. Indeed, the majority opinion acknowledges each of the following:

¶ 75. First, liability for maintaining a public nuisance can be based on negligent conduct.

¶ 76. Second, the same principles of comparing and apportioning negligence apply also to a public nuisance.

¶ 77. Third, both notice and causation, which are generally hallmarks of negligence actions, are required in public nuisance actions.

¶ 78. Fourth, as in negligence cases where an action can be maintained for an omission, a public nuisance action is maintained for failure to abate (which is an omission).

¶ 79. Fifth, and again as in negligence cases, public policy considerations can limit liability for public nuisance cases.[1]

¶ 80. On top of all this, sprinkled throughout the majority opinion are numerous other statements suggesting that the public nuisance action in this case is ultimately an action for negligence: "nuisance can be grounded on negligent or intentional conduct," majority op. at ¶ 25 (citing *Raisanen v. City of Milwaukee,* 35 Wis. 2d 504, 514, 151 N.W.2d 129 (1967)); "[c]ontributory negligence is a defense in an action for damages occasioned by a nuisance grounded upon negligence,"

---

[1] The majority cites no authority for the proposition that the public policy factors that limit liability for negligence also apply to limit liability for public nuisance. It appears that the majority is relying on *Walker v. Bignell,* 100 Wis. 2d 256, 301 N.W.2d 447 (1981), and *Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 247 N.W.2d 132 (1976), for the proposition. *See* majority op. at ¶ 44. However, *Walker* and *Coffey* involved only negligence, not public nuisance.

majority op. at ¶ 31 (quoting *Schiro v. Oriental Realty Co.*, 272 Wis. 537, 547, 76 N.W.2d 355 (1956)); "where negligence is the basis of the nuisance contributory negligence principles apply," majority op. at ¶ 31 (citing *McFarlane v. City of Niagara Falls*, 160 N.E. 391, 392 (N.Y. 1928)).

¶ 81. Also, the majority opinion discusses each of the defendant's liability in terms of its acts or omissions, further reinforcing my conclusion that this case is grounded in negligence. As to the Frankes, the majority determines, "their responsibility is based solely on their failure to trim the branches of their tree." Majority op. at ¶ 51. Likewise, the majority states that "Dodge County does not escape liability based on its failure to trim the offending branches." Majority op. at ¶ 62. Finally, the majority addresses "whether the Town of Leroy should be held liable for its failure to trim the branches," concluding that it should. Majority op. at ¶¶ 63, 66.

¶ 82. In addition to interspersing its opinion with what reads like a negligence analysis, the majority relies heavily upon *Brown v. Milwaukee Terminal Ry. Co.*, 199 Wis. 575, 224 N.W. 748, *on reargument,* 199 Wis. 588, 227 N.W. 385 (1929). *Brown,* however, recognizes that nuisance cases like the one before us are essentially grounded in the failure to exercise ordinary care, that is, negligence.

¶ 83. The *Brown* court explained:

> In such cases where danger results, not from the planting of the tree, but through subsequent changes for which the defendant is not responsible, it is essential to liability that it be shown either that the defendant knew of the danger incident to the maintenance of the tree or that such condition had existed for such length of time that, *by the exercise of ordinary care,* the

defendant ought to have discovered the danger *and to have removed it* before injuries were sustained by the plaintiff.

199 Wis. at 590 (emphasis added). Thus, even *Brown,* which the majority terms the "seminal case that links public nuisance and negligence concepts," majority op. at ¶ 19, explains that negligence is "essential" to liability here.

¶ 84. The reason the majority opinion reads like a negligence analysis is also explained by leading authorities on tort law. For example, Dobbs recognizes three grounds for a public nuisance cause of action for damages and explains that nuisance is little more than a label that covers all three:

> "[T]alk of public nuisance in personal injury cases can be confusing when the plaintiff claims damages rather than abatement. If the defendant should be liable for the injury, it is because he has intentionally caused personal injury, carried on an abnormally dangerous activity, violated a statute aimed at protecting the plaintiff, *or was negligent. To label the case as one of nuisance adds nothing to the clarity of decision-making or policy.* Plaintiffs usually assert a public nuisance causing personal injury for strategic reasons, for example, to avoid the effect of their own contributory fault. But as Cardozo said in the leading case, "whenever a nuisance has its origin in negligence, one may not avert the consequence of his own contributory fault by affixing . . . the label of a nuisance."

Dan B. Dobbs, 2 *Law of Torts* § 467, p. 1337–38 (2001) (emphasis added) (footnotes omitted).

¶ 85. Similarly, the Restatement (Second) of Torts recognizes the same three grounds for nuisance and that allegations of nuisance based on negligent conduct remain essentially an action for negligence:

145

Many nuisances, both public and private, are not intended by the defendant and do not arise from any abnormally dangerous activity, but are the result of mere negligence in failing to take proper precautions to prevent the invasion of the right. When this is the case the contributory negligence of the plaintiff is available as a defense as fully and under the same rules and conditions as in the case of any other action founded upon negligence. This is true, for example, when the defendant allows his building to fall into disrepair through failure to make reasonable inspection of it and its condition becomes dangerous to travelers on the highway or to the owner of adjoining land. *In such a case the defendant's conduct is not removed from the field of ordinary negligence because it results in nuisance. The action remains essentially one for negligence and the contributory negligence of the plaintiff is a defense.*

Restatement (Second) of Torts § 840B cmt. d (1979) (emphasis added).

¶ 86. I am persuaded by these learned authorities, and I am also persuaded by the adage: "[w]hen I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck." *City of New York v. Clinton,* 985 F. Supp. 168, 179 (D.D.C. 1998), *aff'd, Clinton v. City of New York,* 524 U.S. 417 (1998). I call this case essentially one of negligence.

¶ 87. I agree with the majority that on summary judgment none of the defendant is precluded from liability. However, I disagree with the majority that the plaintiff should be granted partial summary judgment based on a public nuisance cause of action as the majority defines it.[2]

---

[2] Wisconsin Stat. ch. 823, entitled "Nuisances," contains various provisions pertaining to public nuisances, including a statute authorizing causes of action for public nuisance. Wis.

¶ 88. In addition, I disagree with the majority's conclusion that public nuisance is "analogous to negligence per se." Majority op. at ¶ 20. Based on the interspersed negligence analysis in the majority opinion, the *Brown* case, and the secondary authorities cited, I conclude that this case remains essentially an action for negligence. Because the majority does not, I respectfully concur.

¶ 89. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this concurrence.

Stat. § 823.01. Thus, I do not question the power of government entities or others to bring actions to abate a public nuisance. I do, however, question the majority's conception of public nuisance in this action for damages.