Craig HOLT, Plaintiff-Appellant,

v.

Ronald HEGWOOD, American Family Mutual Insurance Company, Defendants-Respondents,

BLUE CROSS-BLUE SHIELD OF WISCONSIN, Defendant,

COMPCARE HEALTH SERVICES INSURANCE CORPORATION, Intervenor,

Stephen THIEL, Joan Thiel, Defendants-Respondents.

Court of Appeals

*No. 2004AP3007. Submitted on briefs August 02, 2005. —Decided October 04, 2005.*

2005 WI App 257

(Also reported in 708 N.W.2d 21.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *S.A. Schapiro* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Michael J. Wirth* of *Peterson, Johnson & Murray, S.C.* of Milwaukee for *Ronald J. Hegwood* and *American Family Mutual Insurance Company* and *Henry E. Koltz* of *Schmidt, Darling & Erwin* of Milwaukee for *Stephen Thiel* and *Joan Thiel*.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. KESSLER, J. Craig Holt appeals from a judgment and an order dismissing his claims against numerous defendants for personal injuries and property damage he claims he suffered when a tree limb fell on him and his car. Holt argues that the trial court erroneously dismissed his public nuisance and safe place statute claims. Because the record demonstrates that the trial court based its decision on undisputed material facts and a correct analysis of the applicable law, we affirm.

## BACKGROUND

¶ 2. The facts underlying the myriad claims involved at various times in this litigation are relatively simple. Holt's cousin lived in an apartment building owned by Ronald Hegwood, one of the defendants in this action. There was a driveway along one side of the apartment building that provided access to a parking area at the rear of the building. Two trees grew along the driveway, inside a fence that appeared to separate the Hegwood property and the adjacent property, owned by Stephen and Joan Thiel, who are also defendants.

¶ 3. On April 27, 2001, Holt went to his cousin's house to wash Holt's car in the driveway. The day was breezy. As Holt and his cousin stood in the driveway washing the car, a limb from one of the trees fell and, Holt alleges, injured him and damaged his car. Two issues related to the incident came to light. First, it appeared that the fence was not actually on the property line, and that the tree limb might have been growing on the Thiels' property, as opposed to on Hegwood's property. Second, to determine why the limb fell, an arborist was consulted. The arborist opined that

the errant limb had two prior cracks. However, no evidence suggested that the defendants were aware of any cracks in the tree.

¶ 4. So began the saga of this litigation, which might be summarized in a poem by Robert Frost:

> The tree the tempest with a crash of wood
> Throws down in front of us is not bar
> Our passage to our journey's end for good,
> But just to ask us who we think we are . . . .[1]

This fallen limb, and the increasingly imaginative theories of liability offered by Holt, have delayed the movement of this case to its journey's end. They have not blocked the way permanently. However, the journey has been more complicated than the underlying incident. A summary of that journey is necessary to understanding the final resolution of this case.

¶ 5. On June 11, 2002, Holt sued Hegwood in small claims court, alleging Hegwood had negligently maintained his property. The case was moved to the large claims division.

¶ 6. On March 28, 2003, approximately two years after the limb fell, Holt filed his first amended complaint, adding insurance companies as defendants. No new causes of action were alleged. On June 10, 2003, a second amended complaint was filed; this complaint added a claim of public nuisance and private nuisance, but did not add new defendants. Two weeks later, on June 24, 2003, a third amended complaint was filed. This complaint added the Thiels as defendants and alleged violations of the safe place statute, *see* Wis. Stat.

---

[1] Robert Frost (1874–1963), "On a Tree Fallen Across the Road" (1923).

§ 101.11.[2] On March 12, 2004, a few days shy of three years past the errant limb's descent, Holt moved for permission to file his fourth amended complaint. Holt also asked the trial court to take judicial notice of MILWAUKEE, CITY, WIS., CODE OF ORDINANCES ("CODE") § 116–53 (2005),[3] to declare that it applied in this case, and to instruct the jury that the defendants were negligent *per se* based on their alleged violation of this ordinance.

¶ 7. Defendants Hegwood and American Family objected to the proposed fourth amended complaint. In addition, in their trial brief, filed April 2, 2004, they sought dismissal of the safe place claim, the public nuisance claim, and the private nuisance claim by asking the court to refuse to instruct the jury on those claims on the grounds that there were no facts in the record, or in the now-completed discovery, that would permit a jury to find for the plaintiff on any of those theories.

¶ 8. The trial court treated all of these requests, except the request to file the fourth amended complaint, as motions for summary judgment.[4] At a hearing

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[3] MILWAUKEE, CITY, WIS., CODE OF ORDINANCES § 116–53 (2005) provides:

**Hazardous Trees and Storage of Cut Elm Wood Prohibited.** The planting, preserving and maintaining of trees which are injurious and detrimental to the community, and all such trees as may be liable to fall upon any sidewalk, street or building, or which are hazardous or may result in injury to person or property because of a defective or diseased condition, or contagiously diseased trees, or the storage of cut elm wood, unless debarked or treated with a proper insecticide, shall be deemed a public nuisance and are prohibited.

[4] A trial court may convert a motion to dismiss into a motion for summary judgment when matters outside the plead-

on April 21, 2004, the trial court denied the motion to permit a fourth amendment of the complaint because the proposed amendment was presented well beyond the time set in the scheduling order for amendment of pleadings, which had been established by agreement between the parties. In addition, the trial court noted that plaintiff had shown no mistake, surprise or excusable neglect which might justify such a late amendment, and concluded that it would be unfair to the defendants to permit a new cause of action at such a late date in the proceedings. The trial court also denied Holt's request for a declaration that a violation of CODE § 116–53 would be negligence *per se.*

¶ 9. The trial court asked the parties to brief the question of whether there was a valid claim stated for creation of a public nuisance, and if so, whether CODE § 116–53 was relevant to civil liability for a public nuisance. The trial court held another hearing on August 25, 2004, to address those issues. The trial court ruled that there were no facts presented to it from which a jury could conclude there was a violation of the safe place statute; hence, the jury would not hear evidence on that claim and would not be instructed on that statute. Further, the trial court ruled that because

---

ings are considered. *Schopper v. Gehring,* 210 Wis. 2d 208, 216, 565 N.W.2d 187 (Ct. App. 1997). Although Holt argues the trial court should not have proceeded on summary judgment grounds, we discern no error.

We also note, for the benefit of future litigants, that the captions of the papers filed in this action do not always describe what is contained therein. Nor do the various amended complaints accurately identify their sequence. It would be of great assistance to both the trial court and to this court if practitioners would briefly, and accurately, caption their pleadings, moving papers and other filings.

no facts had been presented which would support finding a public nuisance, there would be no evidence taken, and no instructions given, on the public nuisance claim. The trial court then dismissed both the safe place violation claim and the public nuisance claim, and concluded that CODE § 116–53 was not relevant to any issue remaining in the litigation. Consequently, the trial court ruled that it would not take judicial notice of that ordinance. This left only plaintiff's claims based on negligence and creation of a private nuisance. Holt voluntarily dismissed both of these remaining claims before entry of judgment conforming to the trial court's orders. This appeal followed.

## DISCUSSION

¶ 10. Holt argues that the trial court should not have dismissed his claims based on public nuisance and violation of the safe place statute. This case comes to us in the context of a dismissal based on summary judgment. In evaluating the grant or denial of a summary judgment, we apply the same methodology as the trial court and review *de novo* the grant or denial of summary judgment. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is proper if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In evaluating the evidence, we draw all reasonable inferences in the light most favorable to the non-moving party. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). Whether an inference is reasonable and whether more than one reasonable inference may be drawn are questions of law. *Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812 (1991).

## A. Public nuisance claim and CODE § 116–53

¶ 11. Holt's second amended complaint alleged a claim for public nuisance. On appeal, Holt bases his argument that this claim was erroneously dismissed on a theory that CODE § 116–53 creates a cause of action for public nuisance. Hegwood and his insurer (collectively, "Hegwood") argue that this court should not even consider issues related to § 116–53 because Holt has not appealed from the order denying his motion to file the fourth amended complaint, which was the first complaint to suggest that § 116–53 was relevant to the case. Holt's notice of appeal states that he is appealing from "the final order of the trial court of Sept. 29 [2004] and from the judgment of the trial court of Nov. 3, 2004." The September 29, 2004, order dismissed the safe place and public nuisance claims and declined to take judicial notice of § 116–53. The judgment dismissed the entire case based on previous dismissals of each claim. We decline to declare that all issues related to § 116–53 are outside the scope of Holt's appeal and, instead, will address his arguments on their merits.

### 1. Judicial notice

¶ 12. Holt asked the trial court to take judicial notice of CODE § 116–53. The trial court declined, stating in its September 7, 2004, order that it "would not take judicial notice" of the ordinance. This wording is unfortunate, because it is clear from the record that the trial court *did take* judicial notice of the ordinance, as required by WIS. STAT. § 902.03.[5] What the trial court refused to do was declare that § 116–53 establishes a private cause of action and that it applies in this case.

---

[5] Judicial notice is an evidentiary rule that eliminates the

## 2. CODE § 116–53 does not create a private cause of action for persons injured when a tree limb on private property falls

■■■■■■

¶ 13. The violation of a statute or an ordinance[6] does not automatically impose civil liability. *See Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 66, 596 N.W. 2d 456 (1999).

> [T]hree questions must be answered in the affirmative before the violation of a statute will constitute negligence per se: "(1) the harm inflicted was the type the statute was designed to prevent; (2) the person injured was within the class of persons sought to be protected; and (3) there is some expression of legislative intent that the statute become a basis for the imposition of civil liability."

*Id.* at 66–67 (citation omitted). In order to impose a duty beyond that imposed by common law, there must be an expression of that purpose in "clear, unambiguous, and peremptory" language. *Burke v. Milwaukee & Suburban Transp. Corp.*, 39 Wis. 2d 682, 690, 159

---

need for parties to prove certain types of legislative or adjudicative facts that are not in dispute. The rules related to judicial notice are codified in WIS. STAT. ch. 902. Among the rules are provisions according to which a court *shall* take judicial notice of adjudicative facts that are not subject to reasonable dispute when a party asks the court to do so and supplies the necessary information, *see* § 902.01(4), and *shall* take judicial notice of municipal ordinances, *see* § 902.03(1)(a). Judicial notice of *the existence* of CODE § 116–53 was required under § 902.03. The trial court acknowledged the existence of the ordinance, as required under § 902.03.

[6] The principles of statutory construction apply equally to construction of municipal ordinances. *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 6, 260 Wis. 2d 633, 660 N.W.2d 656.

N.W.2d 700 (1968) (citation omitted). A statute that merely makes provision for the safety or welfare of the public generally, but does not purport to establish civil liability, is not to be construed to establish civil liability. *McNeill v. Jacobson*, 55 Wis. 2d 254, 259, 198 N.W.2d 611 (1972).

¶ 14. We interpret statutory and municipal code language in the context in which it is used, not in isolation but as part of a whole, in relation to the language of surrounding or closely related statutes or code provisions, and we interpret it reasonably, so as to avoid absurd or unreasonable results. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 46, 271 Wis. 2d 633, 681 N.W.2d 110. Thus, CODE § 116–53 must be read in the context of CODE ch. 116, entitled "USE OF PUBLIC WAYS AND PLACES." This chapter addresses such issues as installation of signs, cleaning sidewalks and vacant lots, and managing tree growth.

¶ 15. CODE §§ 116–51 through 116–70 address the maintenance of trees and shrubs and provide penalties for violating the ordinance.[7] Those provisions are aimed essentially at controlling diseased or dangerous trees that threaten public streets or walkways or that harbor disease likely to spread throughout the city. CODE ch. 116 provides a process by which the city may identify diseased or otherwise dangerous trees, demand that the landowner remove the danger or the identified tree, remove the diseased tree if the landowner fails to do so,

---

[7] CODE § 116–70 provides:

**Penalty.** Any person violating any of the provisions of ss. 116–51, 116–52, 116–54, 116–63 and 116–69 shall, upon conviction, pay a penalty to the city of not less than $10 nor more than $25 for each and every offense. Each day in which any of the provisions of these sections are violated shall constitute a separate offense.

bill the landowner for the removal, and fine the landowner for failure to take the remedial action demanded. *See* §§ 116–66—116–68 and 116–70.

¶ 16. We conclude that no language in CODE ch. 116 specifically, clearly, and unambiguously creates a civil cause of action. The only penalty section relates to fines that must be paid. *See* CODE § 116–70. There is no suggestion that the City of Milwaukee Common Council intended to create a private cause of action for violations of the statute. In short, we discern no "clear, unambiguous, and peremptory" language that would lead us to conclude that violations of ch. 116 give rise to a private cause of action. *See Burke*, 39 Wis. 2d at 690 (citation omitted).

■■■■

¶ 17. In addition, we agree with the trial court that there is nothing to indicate that CODE § 116–53 was violated in this case. No city commissioner examined the tree, or the limb that fell, or made any determination as required in order to activate the process set out in the ordinance. No orders with respect to the tree appear to have been issued. The record does not indicate that the tree with the errant branch hung so much as an inch over the public right-of-way. Consequently, the trial court was correct in concluding there was no valid reason to permit the jury to consider this ordinance for any purpose.

### 3. The trial court properly dismissed the public nuisance claim

■■■■■

¶ 18. We affirm the dismissal of Holt's entire public nuisance claim. "A public nuisance is a condition or activity which substantially or unduly interferes

with the use of a public place or with the activities of an entire community." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 21, 254 Wis. 2d 77, 646 N.W.2d 777 (citations omitted). Holt has presented no evidence that the alleged neglect of a single tree had any effect on the use of a public place or on the entire community's activities. In the absence of this evidence, the trial court properly granted summary judgment in the defendants' favor on the public nuisance issue.

## B. Safe place claim

¶ 19. The safe place statute, WIS. STAT. § 101.11, provides three alternative bases from which liability for unsafe premises will flow. The statute applies to employers, to owners of places of employment and to owners of public buildings. It does not create liability for purely private property not owned by an employer, on which no employment occurs, and which is not open to the public. The term "place of employment" used in WIS. STAT. § 101.11(1)[8] is defined in WIS. STAT. § 101.01(11), and includes "every place . . . and the premises appurtenant thereto where either temporarily or permanently any industry, trade or business is carried on . . . ." The term "public building" is defined as "any structure, including exterior parts of such building . . . used in whole or in part as a place of resort,

---

[8] WISCONSIN STAT. § 101.11 provides in relevant part:

**Employer's duty to furnish safe employment and place.**
(1) . . . Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

assemblage, lodging, trade, traffic, occupancy, or use by the public or by 3 or more tenants." WIS. STAT. § 101.01(12).

¶ 20. Holt alleged in the second amended complaint, but provided no facts that established, that Hegwood was "in the real estate investment business."[9] Based on that allegation alone, Holt argued that the real estate Hegwood admitted owning was a place of employment—apparently Hegwood's employment. Holt offered no factual support for the claim that either the building Hegwood owned, or the tree from which the branch fell, were places of employment.

¶ 21. Apparently Holt believed that if the building in which Holt's cousin was a tenant was a "place of employment," then Hegwood, as the owner of a place of employment, would be responsible for the falling limb because it fell on "the premises appurtenant." Unfortunately for Holt, there is no evidence in the record of any employment activities occurring in the building in which his cousin lived. There is no evidence that Hegwood so much as collected rent at the property— which itself would not even render the property a place of employment. *See Antwaun A.*, 228 Wis. 2d at 64 (a landlord's occasional entry onto property to collect rent does not make the property a place of employment).

¶ 22. There is also no evidence that the apartment building is a "public building" as the term is used in WIS. STAT. § 101.11(1) and defined in WIS. STAT.

___

[9] Hegwood answered this allegation by saying, in effect, that he did not know what Holt meant by the phrase, so he could not answer that allegation. Holt argues that this "evasive denial is insufficient to controvert the allegations of the complaint and thus, is an admission." We disagree that Hegwood's answer constitutes an admission that his apartment building is a place of employment.

868

§ 101.01(12). There is nothing in the record that indicates three or more tenants occupy the building, or that it is a place to which the public generally has access. In short, the existing record establishes nothing more than that a tree, located on private property, lost a limb that also landed on private property. That, as the trial court correctly concluded, is insufficient to permit a jury to consider whether there was a violation of the safe place statute.

## C. Request for sanctions

¶ 23. In their response brief, the Thiels and their insurer (collectively, "Thiels") ask this court to conclude that Holt's appeal was frivolous. They seek their costs in defending the appeal. After briefing was completed in this case, our supreme court held that

> parties wishing to raise frivolousness must do so by making a separate motion to the court, whereafter the court will give the parties and counsel a chance to be heard. We caution that a statement in a brief that asks that an appeal be held frivolous is insufficient notice to raise the issue.

*Howell v. Denomie*, 2005 WI 81, ¶ 19, 282 Wis. 2d 130, 698 N.W.2d 621.

¶ 24. The Thiels never filed a separate motion, either before or after *Howell* was issued. However, we need not decide whether parties who argued the frivolous issue in briefing completed prior to *Howell* would be subject to it, because on the merits, we decline to grant the Thiels the relief they request. "To award costs and attorney fees, an appellate court must conclude that the entire appeal is frivolous." *Id.*, ¶ 9. Here, one

869

issue raised was whether CODE § 116–53 creates an independent cause of action; this issue has not been addressed previously by this court. Although we have rejected the argument, we are not prepared to conclude that Holt or his attorney knew, or should have known, that the appeal had no "reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." *See Howell,* 698 N.W.2d 621, ¶ 9 (citing WIS. STAT. RULE 809.25(3)(c)2.). Therefore, because the entire appeal is not frivolous, we deny the Thiels' request.

## CONCLUSION

¶ 25. The trial court correctly granted summary judgment in the defendants' favor, dismissing the claims based on public nuisance and the safe place statute. Based on Holt's voluntary dismissal of the remaining claims, nothing remains to be tried. We affirm the judgment and order dismissing all claims.

*By the Court.*—Judgment and order affirmed.